IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION
AT KANSAS CITY

GERI BACHMAN,

    PLAINTIFF,

    VS.

HICKMAN MILLS C-1 SCHOOL DISTRICT,

    AND

YAW OBENG AND DERRICK JORDAN, SR.,
IN THEIR OFFICIAL AND PERSONAL
CAPACITIES,

    AND

CAROL GRAVES, BYRON TOWNSEND,
ANN E. COLEMAN, IRENE C. KENDRICK,
BETH BOERGER, AND BRANDON WRIGHT
IN THEIR OFFICIAL CAPACITIES AS
DIRECTORS OF THE BOARD OF
EDUCATION,

    DEFENDANTS.

Case No. 23-CV-931

JURY TRIAL DEMANDED

<u>COMPLAINT</u>

1.    This case is about Hickman Mills School District's unlawful discrimination against a Christian teacher, and its policies compelling her to express messages inconsistent with her sincerely held religious beliefs.

2.    The teacher told administrators that her religious convictions prevented her from speaking about girls in ways that would communicate that they are boys.

3.    The administrators told the teacher to use whatever names, pronouns, or genders the students demanded; ostensibly to acknowledge their "right of choice."

1

4. The Defendants' "choice"-based policy was a pretext for discrimination; the policy targeted teachers with disfavored views.

5. As some students claimed to change their identity by the class period, Plaintiff was fired for using the name and sex she found in the District's own computer system.

6. Plaintiff, a girls' PE teacher, referred to students in her Girls' PE class by female names and pronouns consistent with the student's sex, as listed in school records.

7. The students allegedly notified Defendants; Defendants reprimanded Plaintiff for refusing to use different names and pronouns for her students.

8. Defendants strained to argue that Plaintiff violated their policies against "sex discrimination;" yet their policy allowed different PE classes for girls and boys and did not mention gender identity at all.

9. Plaintiff requested an accommodation for her religious beliefs.

10. She was terminated in retaliation.

11. If a student was harmed by being classed by female sex, it was inconsistent to keep the student in a Girls' PE class. The District could have moved the student, been logically consistent, and accommodated Bachman.

12. Rather than accommodate Bachman, administrators and the Board refused to renew Plaintiff's contract for the next year.

13. These facts show that the goal was to get rid of a teacher with religious convictions like Bachman's; the policy had nothing to do with protecting students from sex discrimination.

14. Defendants' actions violated Plaintiff's rights under First and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*; the Missouri Constitution, Article I, §§ 2, 5, and 10; the Missouri Religious Freedom Restoration Act ("Mo. RFRA"), §§1.302 and 1.307, RSMo.; and §160.2500, RSMo.

15. Plaintiff seeks a declaration of her rights, injunctive relief, all the damages recoverable from Defendants, and a reasonable attorney fee, to remedy the harms to her.

## FACTS COMMON TO ALL COUNTS

### JURISDICTION & VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 1343.

17. The acts in this suit occurred in Jackson County, Missouri, and Defendants reside in Jackson County, so venue is proper here. 28 U.S.C. §1391(b)(2).

18. This Court has authority to grant the requested declaratory relief; 28 U.S.C. §2201, *et seq.*, 42 U.S.C. §2000cc, *et seq.*

19. This Court has authority to issue the requested injunctive relief. Fed.R.Civ.P. 65 and 28 U.S.C. §1343(3).

20. This Court has authority to award the requested damages. 28 U.S.C. §1343(3).

### PARTIES

21. Plaintiff Geri Bachman is a resident of Kansas; in 2021-22, she was a teacher at Smith-Hale Middle School in the Hickman Mills School district.

22. At Smith-Hale, Bachman taught Physical Education to 7th & 8th grade girls.

23. Defendant Hickman Mills C-1 School District ("District") is a public school district in Jackson County, Missouri; it is operated as a 'seven-director' school Board, which has a special status under Missouri Law. Policy AA; § 162.211, RSMo.

24. Under Missouri law, the "government and control" of a seven-director school district is vested in a board of education; according to Policy AA of the district, Hickman Mills is such a district. § 162.261, RSMo.; Policy AA.

25. The Board has "general and supervising control, government and management of the public schools and public school property of the district in the city and shall exercise generally all powers in the administration of the public school system therein."

26. By law, the Board may "[m]ake, amend and repeal rules and bylaws for its meetings and proceedings, for the government, regulation and management of the public schools and school property in the city, for the transaction of its business, and the examination, qualification and employment of teachers, which rules and bylaws are binding on the board of education and all parties dealing with it until formally repealed." §162.621, RSMo.

27. The Board also appoints the "officers agents and employees" of the District.

28. Defendant Yaw Obeng is the Superintendent of Hickman Mills C-1 School District; according to board policy, the superintendent has supervisory authority:

> The superintendent of schools shall be the chief executive officer of the Board of Education and the administrative head of all divisions and departments of the Hickman Mills C-1 School District. The superintendent shall be responsible to the Board for the execution of its policies and regulations. The superintendent shall be the Board's representative and the channel through which all directives from the Board to its employees or students shall be communicated.

29. Defendant Obeng also has discretionary rulemaking authority; the Board's policy says:

> The superintendent may also give directives for the management of the school district to employees and students on points not covered by the adopted Board policies and regulations. Such directives shall be valid unless disapproved by the Board.

30. Defendant Derrick Jordan, Sr., was at all times relevant the Principal of Smith Hale Jr. High School, a school operated by the District. He is sued here in his official and personal capacities.

31. The Board's policy gives Jordan power to act with the approval of Defendant Obeng, and says Jordan:

…will be the chief administrator of his or her school, and shall be responsible for and have authority over the actions of students, professional and support staff, visitors, and persons hired to perform special tasks. … The principal or director is charged with the supervision and direction of the staff… Within the framework of Board policies and the general rules and procedures established by the superintendent, the principal or director may implement and enforce additional procedures as deemed advisable for efficient operation of the school.

Board Policy CF.

32. Defendant Jordan is the chief official of the Smith-Hale Middle School, under the authority of the District. Jordan has supervision, management, and control over staff and faculty of the school. His actions here took place in Jackson County, Missouri. Jordan has the authority to enforce the District's policies within the school.

33. Carol Graves, Byron Townsend, Ann E. Coleman, Irene C. Kendrick, Beth Boerger, and Brandon Wright are current Directors of the Board of Education of the Hickman Mills School District, located in Jackson County, Missouri. The Board is a representative body elected by the registered voters of the district; they are sued here in their official capacity.

34. All Defendants act under color of law supplied by Missouri's statutes and regulations, such as §§ 167.161 and 167.171, RSMo., and the statutes and regulations created by the Board.

### Plaintiff's Deeply Held Religious Beliefs

35. Plaintiff Bachman taught Girls' Physical Education at Smith-Hale Middle School during the 2021-2022 school year.

36. Mrs. Bachman is a professing Christian who seeks to live out her Christian faith daily.

37. Because of this faith, Mrs. Bachman has sincerely held religious beliefs that govern her views about human nature, marriage, gender, sexuality, morality, politics, and social issues.

38. Mrs. Bachman's faith informs her convictions concerning human nature, the purpose and meaning of life, and ethical and moral standards that should govern human conduct.

39. Mrs. Bachman's faith teaches her that God immutably creates each person as male or female; that these two sexes reflect the image of God and design of God; and that rejection of one's biological sex is a rejection of the action of God within that person.

40. Mrs. Bachman also believes she cannot affirm as true those ideas and concepts that she believes are not true. Doing so, she believes, would violate biblical, divinely ordained commands against dishonesty and lying.

41. Further, Mrs. Bachman believes that to assist another in affirming that individual's rejection of their biological sex would make her complicit in the sin of rejecting the image of God in that individual's life.

42. Mrs. Bachman's faith prohibits immoral, dishonest, harmful, or sinful speech.

43. Mrs. Bachman believes that referring to a male child as a female, or a female child as a male, is sinful.

44. Mrs. Bachman believes that referring to a male child as a female, or a female child as male, hurts the child because it is untrue, and may lead to harmful actions based on falsehood.

45. Mrs. Bachman strives to treat every individual with dignity, love, and care because she believes all people are created in the image of God, with God-given dignity and worth.

46. On top of her religious views, Mrs. Bachman understands, based on scientific evidence and her own experience as an educator, that children do not have a fully developed capacity to understand the long-term consequences of their decisions.

47. Mrs. Bachman wants the best for all her students and wishes to avoid doing anything that would harm them or create an unreasonable risk of harm to them.

48.    Mrs. Bachman is aware of an increase in students expressing gender identities that are inconsistent with their sex and accompanying requests to be addressed with a different name consistent with the new identity and pronouns that are inconsistent with their sex.

49.    Mrs. Bachman understands that many (if not most) children who at some point express a gender identity inconsistent with their sex will eventually return to expressing an identity in harmony with their sex. For these children, all forms of treatment that "validate" the gender identity inconsistent with the child's sex are harmful and can lead to irreversible forms of treatment that are the most harmful.

50.    Mrs. Bachman understands that some purveyors of gender transition ideology recommend that individuals first explore a "social transition," that is to say, "living in their affirmed gender rather than their gender assigned at birth, which may involve changing their physical gender markers such as hair and clothing as well as their name and gender pronoun." *See., e.g.,* Morandini JS, et al., *Is Social Gender Transition Associated with Mental Health Status in Children and Adolescents with Gender Dysphoria?* Arch Sex Behav. 2023 Apr;52(3):1045-1060. doi: 10.1007/s10508-023-02588-5. Epub 2023 Apr 4. PMID: 37014582; PMCID: PMC10101898.https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10101898/

51.    Mrs. Bachman wishes to avoid encouraging children to make potentially irreversible and life-changing decisions that they may later regret. Mrs. Bachman believes that, because of the difficulty of assessing these matters, children should not be encouraged to explore the use of other names or pronouns as a form of 'social transition' precedent to hormone therapy or surgical sex reassignment.

52.    Mrs. Bachman objects to participating personally in any child's 'transition,' because she believes that participating in this active intervention creates an unreasonable risk of harm to the child.

53. Mrs. Bachman also understands, based on scientific evidence, that (consistent with all sexually reproductive species) human sex is defined with reference to organization for gamete production and that there are only two sexes, which are male and female.

54. Because a person is male or female based on sex, not personal identity, Mrs. Bachman believes that addressing a male student as "she," or addressing a female student as "he," is dishonest.

55. Using pronouns inconsistent with a child's sex to address or refer to that child communicates a message—that what makes a child a boy or a girl is that child's personal sense of being a boy or girl rather than the child's sex.; that message is inconsistent with Mrs. Bachman's scientific understanding and religious beliefs.

56. In fact, Ms. Bachman understands that scientific evidence shows that using names or pronouns inconsistent with a child's sex does not alleviate gender dysphoria. *Id.*

57. In fact, gender dysphoria (and cross-gender identities) often desist in prepubertal children; premature social gender transition may foreclose the child's gender identity development, increasing the likelihood that gender dysphoria will persist and leading to more permanent, irreversible medical interventions after adolescence. *Id.*

58. Being forced to communicate this message and participate in a student's expression harms Mrs. Bachman by forcing her to express something she believes is untrue and harmful to her students; and it harms her students by actively contributing to a risk of immediate, negative psychological effects and long-term irreversible physical effects.

59. Being forced to communicate this message and participate in a student's social transition also harms Mrs. Bachman by undermining her ability to share her faith and express her views on matters of public concern outside of school. If she claims outside school that participation in a social transition communicates something that is false and harmful, but then personally participates in a student's social transition at school, she will communicate either: (1) that she does not actually believe that the message

communicates something that is false and harmful or (2) that she is willing to harm children to keep her job. Neither is true.

60.    Mrs. Bachman does not discriminate against any of her students based on race, religion, sex, gender identity, sexual orientation, or any other basis that her school or applicable law prohibits.

## DEFENDANTS' POLICY REQUIRES SOME TEACHERS TO PARTICIPATE IN EACH STUDENT'S MESSAGE ABOUT 'TRANSITION'

61.    Defendant Jordan ordered Plaintiff to use any name, pronoun, or gender identity claimed by a student; this order applied even where it was inconsistent with that student's legal name and natal sex.

62.    Defendant Jordan grasped at written Board policies and standards for teachers to justify this demand.

63.    Jordan asserted that Board Policy GBCB required Bachman to follow whatever instructions Jordan delivered.

64.    Jordan said Policy AC (prohibiting discrimination on sex or other characteristics protected by law) and Title IX required Bachman to speak student's requested words; but Bachman's actions did not discriminate on sex, or any other characteristic protected by law.

65.    Jordan also pointed to HMC-1 Standards of Professional Conduct, which required "integrity" in communications; but the whole reason for the dispute is Bachman's quest speak the truth with integrity, consistent with her sincere religious beliefs.

66.    Finally, Jordan said Bachman's communication on gender violated Teacher Evaluation standards, such as Standard 5, Indicator 3 on Classroom, school, and community culture, and Standard 8, Indicator 3, concerning Professional rights, responsibilities, and ethical practices. But Jordan never explained how her conduct allegedly violated these standards.

9

67. Plaintiff ultimately believes she did not violate any written policies or standards of the District.

68. Defendants' policy, at least as applied here, is not neutral toward religion or generally applicable; other teachers were allowed to use a student's legal name, or another name that was not inconsistent with a particular student's sex, but Mrs. Bachman was terminated after she requested a religious accommodation from the policy.

69. Under Defendants' policy, students may select and express any gender identity they choose because the expression is based entirely on an individual student's subjective feelings. The potential range of expression, and therefore, the potential range of terms that a teacher may be obliged to use and validate, is infinite.

70. If students heard Mrs. Bachman use a male pronoun to refer to a female student, or vice versa, they would reasonably understand that she is endorsing the idea that a person can transition to another sex, or that it is appropriate to refer to a female as a male, or vice versa.

71. Mrs. Bachman's refusal to participate in the students' social transitions did not interfere with the efficient functioning of the school on any occasion.

72. Defendants appear to claim unlimited discretion to determine what a teacher's obligations are with respect to social transition, and then assign the right to determine compliance to an individual student.

73. Once a student notified Defendants that a teacher has not used a student's desired language, Defendants then determine a punishment for the Teacher, which can include (as here) reprimand and termination.

74. Defendant Jordan's policy was adopted or ratified by each of the other Defendants and has become Defendants' policy.

### The District Applies its Policy to Plaintiff and Terminates Her Employment

75. On or about October 7, 2021, Bachman was summoned to a meeting with Derek Jordan, Sr., the principal.

76. At the meeting, Jordan demanded that Bachman address students with their chosen names and pronouns.

77. Bachman told Jordan that she was a Christian, and that her religious beliefs prevented her from describing biological females as males or describing biological males as females.

78. Bachman told Jordan that if a child were medically diagnosed with gender dysphoria or a similar condition, that her religious beliefs could be satisfied by avoiding the use of gendered pronouns and using gender-neutral given or surnames. But Bachman said her religious beliefs prevented her from using a female gendered name or female pronouns for a student that was male (or vice versa for females), or otherwise suggesting a gender different from the child's sex.

79. When Bachman left the meeting, she understood that Mr. Jordan had agreed that Bachman could fulfill her teaching duties without violating her religious beliefs using gender-neutral language.

80. Jordan's agreement constituted an accommodation of her religious beliefs, and so Mrs. Bachman understood that she was operating under an accommodation and following the Policies and instructions of the Principal after the meeting.

81. Mrs. Bachman believed the accommodation worked well. There had been no disruptions in class that she was aware of.

82. But according to the District's later letter, sometime in January 2022, the District "received two separate student statements that indicated your refusal to address these students by the gender they have identified."

83. According to the District, one of the student complaints alleged that Bachman had said, "You know God made you in a beautiful and amazing way." The District also

identified a religious conversation with another teacher. Thus, the District and the Students attributed Bachman's position to her religious convictions.

84. According to the District, "[Bachman] stated in a meeting on Wednesday, January 26, 2022, after reviewing the student statements that [she] would only refer to the students by gender and name in [the District's computer system]."

85. The District's computer systems identified the students as female, and the students were enrolled in Bachman's class, Girls' Physical Education.

86. Further, the District's computer system said both students had given names that appeared consistent with their biological sex.

87. The District's system allows for the entry of nicknames, and even special bathroom policies, but no special information was provided.

88. Thus, the District's own systems referred to the students in ways that violated the alleged preferences.

89. On February 9, 2022, Bachman received a letter of reprimand from Jordan.

90. The reprimand letter said Bachman had failed to follow Jordan's "directive" regarding "acknowledging students' right of choice and remaining neutral regarding religious matters" and was "a blatant disregard of [the District's] policies...."

91. This was the core "policy" that led to Bachman's termination: Bachman had been commanded by Jordan to communicate a certain message, and that message was to be a student's message about transgender ideology.

92. The reprimand letter later named several policies allegedly 'violated,' but only to attempt to bolster Jordan's *ipse dixit* that compelled Bachman to speak against her religious convictions.

93. The reprimand letter said Bachman had been insubordinate, and that her conduct violated Board Policies AC, GBCB, and HMC-1 Standards of Professional Commitment, as well as Title IX, as explained above.

94. The reprimand letter said Bachman's refusal to use transgender terminology required negative evaluations under classroom standards related to "Classroom, school, and community culture," and "Professional rights, responsibilities, and ethical practices."

95. The reprimand letter said a copy would be referenced in Bachman's employee evaluation.

96. Bachman submitted a short rebuttal letter on or before February 14, 2022. In it, she affirmed that she accepted and loved all children. She said she had received no written documentation that either of the two students wanted to be known as boys. The school's computers referred to them as female. Bachman said neither the students nor the parents had suggested a different preference of name or gender, but Bachman believed that boys should be moved to a boys' physical education class.

97. On and after the reprimand letter of February 9, 2022, Bachman noted that the two students involved were inconsistent in their demands, such that the names and genders demanded of other teachers were different from the demands made to Bachman.

98. So, in Bachman's Girls' PE class, Student A demanded to be called a boy, with male pronouns. In another class, Student A was identified by the name and gender given in the School's computers. In another class, taught by a member of the LGBT community, Student A went by a third name.

99. Student A later wrote a condolence letter to Plaintiff, and signed the name that allegedly was a source of upset.

100. This suggests the students were assessing and targeting teachers, to figure out which teachers would comply with their requests.

101. At no point was Bachman ever told that the students involved were medically diagnosed with gender dysphoria or some other medical, psychological, or other condition.

102. Bachman asked if she could ask the Student A's parents about the Student A's preferences and was told that she could not talk to the parents about this information.

103. Thus, the District's policy restricted Bachman's freedom of speech and religion, and compelled Bachman to speak the students' messages, in violation of the First Amendment.

104. Bachman is a 61 year-old, female who had been open about her Christian faith.

105. Bachman believes the students knew she was a Christian and were targeting her intentionally; the District's letter alleges that Bachman told a student, "You know God made you in a beautiful and amazing way."

106. Once the students found that Bachman would not speak their message because of her faith, they complained to administrators.

107. The Administrators should have denied the students' discriminatory, targeted demands, and should have honored her requested accommodation.

108. Defendant Jordan that she had referred to the students by the names and biological sex stated in the school's computer systems, and that her class was supposed to consist of female students, and that she stood by her earlier position on the use of gendered pronouns and names.

109. On March 14, 2022, Bachman was notified in writing that Mr. Jordan would recommend the School Board terminate her contract at the end of the school year, allegedly for violating Missouri Teacher Standards on "Classroom school and community culture" and "professional rights, responsibilities, and ethical practices," related to the gender of the students.

110. On March 25, 2022, Bachman was notified in writing that the then-Directors of Hickman Mills School Board had voted to not renew her contract. This was done, apparently, in a closed meeting.

111. Upon information and belief, Jordan and Obeng recommended the non-renewal vote.

112. On July 31, 2022, Bachman's contract ended, and she was terminated.

113. Upon information and belief, Defendant Obeng and Defendant Directors agreed with, approved, and ratified the actions of Jordan and other administrators, and has caused their policy to be the policy of the entire district.

114. Upon information and belief, the current Directors continue to support this policy.

### Post-Termination to Present

115. Since her termination, Bachman has been ready, willing, and able to work.

116. Bachman timely filed a complaint with the EEOC, which issued Bachman a right to sue letter on September 25, 2023. This lawsuit is timely filed to pursue the Title VII claims.

117. District receives federal financial assistance.

118. Plaintiff has no adequate remedy at law for the violations of her constitutional rights.

119. Defendants had no legitimate interest in punishing Mrs. Bachman for doing exactly what the Defendants do themselves: treat students consistent with their sex in physical education classes.

120. Defendants' actions were not justified by any legitimate governmental interest.

### Count I
### Free Speech Retaliation
### (42 U.S.C. §1983)

121. Plaintiff incorporates by reference all preceding paragraphs.

122. Mrs. Bachman engaged in constitutionally protected speech by invoking her interest as a citizen in remaining silent on a matter of public concern, or by addressing students by their legal names, or by addressing students consistent with their legal sex all in her attempt to avoid participating in any student's so-called 'social transition.'

123. Mrs. Bachman's desire to avoid participating in students' social transition involves her interest as a citizen because she would never participate in a person's social transition on her own time or at work.

124. Mrs. Bachman's desire to avoid participating in students' social transition involves her interest as a citizen because doing so violates her conscience and the sincerely held beliefs that she maintains as a private citizen.

125. Mrs. Bachman's desire to avoid participating in students' social transition involves her interest as a citizen because no amount of private speech on her own time can offset the harm that she would cause to her own conscience or to her students by participating in their social transitions.

126. Mrs. Bachman had no valid official duty to participate in students' social transition.

127. Defendants' policy and practices, as reflected in the reprimand letter of February 9, 2022, were not a valid curricular requirement; the classes at issue were specifically for female students, not male students.

128. Mrs. Bachman wishes to remain silent on a matter of public concern because the issues of human identity, sex, gender, and mental health raised by social transition (and communicated by words within social transition) are hotly contested in society, politics, and academia, both in the Kansas City area and throughout the world.

129. Mrs. Bachman wishes to speak outside of school on the same issues of public concern without having her message undermined by participating in social transition at school in contradiction to her professed beliefs.

130. Mrs. Bachman's desire to avoid participation in a social gender transition is a matter of public concern because using names and pronouns to participate in social transition takes a specific, identifiable position on this matter—that a person's subjective identity (and not the person's sex) determines whether the person is male or female.

131. Mrs. Bachman has a strong interest as a citizen in speaking (and avoiding speaking) on this issue consistent with her conscience because it is among the sensitive political topics that occupy the highest rung of constitutional protection.

132. But the government has no interest at all that justifies its actions against Mrs. Bachman, since her action never disrupted or undermined any school function and did not place any legitimate interest in jeopardy.

133. Because Mrs. Bachman's strong interest in avoiding speaking on a matter of public concern outweighs any of Defendants' interests in forcing her to participate in students' social transition, she engaged in constitutionally protected activity.

134. Defendants' policies, as reflected in the February 9, 2022, letter and as applied to Mrs. Bachman, violated her constitutional rights.

135. Defendants took adverse action against Mrs. Bachman by reprimanding her, giving her an unfavorable evaluation, and declining to renew her contract.

136. Defendants' action has a causal relationship to Mrs. Bachman's exercise of constitutional rights.

137. Defendants were motivated at least in part by Mrs. Bachman's exercise of constitutional rights.

138. Therefore, Defendants unconstitutionally retaliated against Mrs. Bachman.

## COUNT II
### Compelled Speech
(42 U.S.C. §1983)

139. Plaintiff incorporates by reference all preceding paragraphs.

140. The Constitution protects Mrs. Bachman's right to speak and to not speak.

141. Compelled speech imposes additional harm, and so requires an even more urgent justification.

142. The government must withstand "exacting scrutiny" to furnish this more urgent justification for compelled speech, which requires showing that compelling Mrs. Bachman to speak furthers a compelling interest that could not be secured by less restrictive means.

143. Defendants' policies, as reflected in the February 9, 2022, letter and as applied to Mrs. Bachman, sought to compel her to break her silence, or to speak words contrary to her faith. The policies also sought to compel her to speak the message of a student, not Mrs. Bachman's own message.

144. Defendants have no legitimate or compelling interest in forcing Mrs. Bachman to participate in students' social transitions.

145. Defendants undermine any claim to a legitimate interest in by allowing students to decide when employees must use particular pronouns and names.

146. Defendants undermine any claim to a legitimate interest because Defendants use students' legal names themselves in official school documents and computer systems.

147. Defendants could have used much less restrictive means by allowing Mrs. Bachman to avoid using pronouns, by transferring Mrs. Bachman to another class, or by transferring the requesting students to a different class.

148. Because Defendants took adverse action against Mrs. Bachman, the actions were due to her refusal to speak, and the Defendants' both lacked a compelling interest and failed to use less restrictive means, Defendants fail exacting scrutiny.

149. This compelled speech violated Mrs. Bachman's rights.


## COUNT III
### Free Exercise of Religion
(42 U.S.C. §1983)

150. Plaintiff incorporates by reference all preceding paragraphs.

151. The First Amendment of the United States Constitution commands that Congress must make no law "prohibiting the free exercise" of religion.

152. The First Amendment applies to state and local governments, including these defendants, through the Fourteenth Amendment under the "incorporation doctrine."

153. The Free Exercise Clause binds local subdivisions of the state, such as the School District, through the Fourteenth Amendment.

154. As government agents, Defendants must uphold and protect citizens' First Amendment rights.

155. The Constitution requires all of Defendants policies and practices to be neutral toward religion and generally applicable to employees under their authority.

156. Congress has provided for challenges to First Amendment violations by government actors. 42 U.S.C. §1983 creates a private right of action against any person who, under color of state law, deprives another of "rights, privileges, or immunities secured by the Constitution." The private right of action includes "an action at law" and a "suit in equity." *Id.*

157. Defendants' policies and actions, particularly as reflected in the February 9, 2022, letter and as applied to Mrs. Bachman, interfered with Mrs. Bachman's free exercise of her religion.

158. Defendants' policies and practices respecting 'social transition' are not neutral toward religion because they treat Mrs. Bachman's religiously motivated refusal to participate in social transition worse than the school's own use of names in school documents and computer systems.

159. Defendants' policies are not generally applicable, because they allow imposition of the burden by an individualized assessment by the student.

160. Defendants' policies and practices respecting social transition are not generally applicable because some employees are allowed to use other names than those required of Mrs. Bachman.

161. Defendants cannot claim their action was narrowly tailored to achieve any legitimate (let alone compelling) interest because they ignored other available, less restrictive means, including allowing Mrs. Bachman to avoid using pronouns (as they let other

employees do) or using birth names (as Defendants themselves do) or by transferring Mrs. Bachman to another class, or by allowing the student to transfer to another class.

162. Defendants' policies and practices have imposed a substantial burden on Plaintiff's sincere religious exercise.

163. A substantial burden imposed by individualized assessment is subject to strict scrutiny; the burden violates the Free Exercise Clause unless it is the least restrictive means of achieving a compelling government interest.

164. Defendants' interpretation, policies or practices are not justified by a compelling government interest.

165. Even if Defendants can assert a compelling government interest, Defendants' interpretation, policies, and practices are not narrowly tailored to achieve that interest.

166. Absent injunctive and declaratory relief against the District and Defendants' interpretation, policies and practices, Plaintiff's speech has been harmed, and will continue to be chilled.

## COUNT IV
### Viewpoint discrimination
### (42 U.S.C. §1983)

167. Plaintiff incorporates by reference all preceding paragraphs.

168. The First Amendment to the United States Constitution commands that Congress shall make no law "respecting an establishment of religion…."

169. The Establishment Clause prohibits government from enacting or enforcing laws in a manner that advances or inhibits religion, or that intentionally discriminates against religion.

170. Defendants' interpretation, policies and practices intentionally targeted Plaintiff and inhibited Plaintiff's speech.

171. Defendants' interpretation, policies and practices have shown bias or hostility against Plaintiff and have violated Plaintiff's rights under the Establishment Clause.

172. Defendants' policy discriminates between the viewpoint of the individual student and that of religious teachers like Plaintiff.

173. Defendants punish a teacher for expressing a teacher's religious and science-based disagreement about whether a student's claims about gender are true or helpful.

174. Defendants do not punish a student for expressing that student's beliefs about whether a student's claims about gender are true or helpful.

175. Defendants, then, punish speech based on the viewpoint of the speech.

176. The Defendants lacks a compelling government interest in punishing Plaintiff's viewpoint differently than the Students' viewpoint.

177. Such targeting by Defendants of Plaintiff's speech is an unconstitutional burden and violation of Plaintiff's constitutional rights, including, but not limited to the Free Exercise of Religion, Due Process of Law, and Equal Protection of the Law.

## COUNT V
### Religious Discrimination in Violation of Title VII
(42 U.S.C. §2000)

178. Plaintiff incorporates by reference all preceding paragraphs.

179. Plaintiff is a Christian.

180. Plaintiff expressed to Defendants, during discussions about this issue, that she is a Christian.

181. Upon information and belief, Defendants had reason to know that Plaintiff was a Christian, and that her beliefs and practices in this circumstance were religiously motivated.

182. Plaintiff's contract would have been renewed but for the discrimination against her religiously motivated beliefs and practices.

183. Defendants also failed to reasonably accommodate Plaintiff's request to use legal names, last names, or gender conforming names, consistent with her religious beliefs.

184. Accommodating Plaintiff would result in no increase in cost or expenditure, let alone a substantial increase.

185. Accommodating Plaintiff would not result in undue hardship to Defendants or Defendants' operations.

186. Defendants punished Plaintiff and ultimately caused her contract to not be renewed because of her religious beliefs and practices.

187. Plaintiff was harmed financially and by reputation by the loss of her employment.

188. Defendant's discrimination against Plaintiff and refusal to accommodate Plaintiff's religious beliefs and practices violated Title VII.

## COUNT VI
### Retaliation in Violation of Title VII
### (42 U.S.C. §2000)

189. Plaintiff incorporates by reference all preceding paragraphs.

190. Plaintiff engaged in activity protected by Title VII—in her request for accommodation and the exercise of her religious beliefs and practices.

191. Defendants took an adverse employment action against Plaintiff, both in altering the terms of her employment (imposing speech requirements on her against her will), in Jordan's recommendation not to renew her contract, in the other Defendants' declining to renew her contract, and in other ways.

192. There was a causal connection between Plaintiff's protected activity and the adverse employment action.

193. Defendant Jordan's letter identified Plaintiff's protected activity and speech as the cause of the adverse employment recommendation.

194. Plaintiff was harmed by the retaliation, in violation of Title VII.

## COUNT VII
### MISSOURI STUDENT RELIGIOUS LIBERTIES ACT
### (§160.2500, RSMo.)

195. Plaintiff incorporates by reference all preceding paragraphs.

196. A public school district shall not discriminate against any person on the basis of a religious viewpoint or religious expression. §160.2500, RSMo.

197. Each district is also to establish a policy on student religious expression.

198. Defendants' policies, as reflected in the February 9, 2022, letter and as applied to Mrs. Bachman discriminate against Bachman because of her religious viewpoints and her religious expression.

199. As a result, Defendants have violated the statute, and Plaintiff is entitled to relief.

## COUNT VIII
### MISSOURI RELIGIOUS FREEDOM RESTORATION ACT
### (§1.302, RSMo.)

200. Plaintiff incorporates by reference all preceding paragraphs.

201. §1.302, RSMo., (commonly known as Missouri's Religious Freedom Restoration Act) states:

> A governmental authority may not restrict a person's free exercise of religion, unless:
> a. The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and
> b. The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest and is not unduly restrictive considering the relevant circumstances.

202. Defendant District and all the Defendants are government authorities, or act under color of law.

203. Defendants have restricted Plaintiff's free exercise of religion, in that they tried to limit her religiously motivated speech, tried to compel her to speak the message of another against her religiously motivated principles, and declined to renew her employment agreement because of her religious exercise.

204. The restriction applied to Plaintiff was not a rule of general applicability. Rather, the restriction discriminates against the viewpoint of religious teachers, and gives unbridled discretion to the Student about the message to be spoken by teachers.

205. Under the District's policy, a student could require different teachers to use different names or genders, such that the imposition on teachers was not generally applicable.

206. The application of the restriction to Plaintiff is not essential to a compelling governmental interest.

207. The restriction of Plaintiff's rights is unduly restrictive, considering the relevant circumstances.

208. As a result, Plaintiff's right to engage in protected free exercise of religion has been violated.

### COUNT IX
### VIOLATION OF MISSOURI CONSTITUTION
### (ARTICLE I, SECTIONS 2, 5 & 10)

209. Plaintiff incorporates by reference all preceding paragraphs.

210. Article I, §2 of the Missouri Constitution provides:

That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design.

211. Article I, §5 of Missouri's Constitution provides, in part:

All men and women have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; that no human authority can control or interfere with the rights of conscience … "nor shall a citizen's right to pray or express his or her religious beliefs be infringed"…

212. Article I, §10 of the Missouri Constitution provides: "That no person shall be deprived of life, liberty or property without due process of law."

213. Defendants interfered with Plaintiff's rights under Article I, §§ 2& 5, and denied Plaintiff's right to worship, express her religious beliefs, and express her religious conscience.

214. The deprivation of her rights occurred without due process of law, as required by Article I, §10 of Missouri's Constitution.

## COUNT X
### VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### FREE EXERCISE OF RELIGION
### DEFENDANTS JORDAN AND OBENG, IN THEIR PERSONAL CAPACITIES
### (42 U.S.C. §1983)

215. Plaintiff incorporates by reference all preceding paragraphs.

216. Defendant Jordan and Defendant Obeng are sued in their individual capacities under this count.

217. Defendant Jordan and Defendant Obeng knew by the clear terms of the law that teachers could not be compelled to speak a message against their religious conscience.

218. Defendant Jordan and Defendant Obeng knew by clear terms of the law that he had to offer and consider reasonable accommodations of an employee's religious beliefs and practices but failed to do so.

219. Defendant Jordan and Defendant Obeng, individually and in conspiracy, intentionally singled out Plaintiff for unfair treatment and intentionally applied an unconstitutional policy, or applied it in an unlawful and unconstitutional manner, in violation of the constitutional rights of Plaintiff.

220. Defendant Obeng authorized and ratified what he knew to be unconstitutional and unlawful actions by Defendant Jordan.

221. Plaintiff's religious liberty rights are so clearly established by preexisting laws that a reasonable administrator would understand that what he was doing violates those rights.

222. The actions of Defendant Jordan and Defendant Obeng caused emotional, reputational, and educational harm to Plaintiff, in violation of 42 U.S.C. §1983.

223. Plaintiff's losses and harms were proximately caused by Defendant Jordan's actions, or in the alternative, Defendant Obeng's actions, taken under color of state law.

## Prayer for Relief

224. Plaintiff seeks a declaratory judgment in her favor and against all Defendants on all Counts, as follows:

   a. A declaratory judgment that Defendants' policies and practices relating to students' social transition, as described in the Letter to Bachman of February 9, 2023, violated her rights under First and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*; the Missouri Constitution, Article I, §§ 2, 5, and 10; the Missouri Religious Freedom Restoration Act, ("RFRA"), §§1.302 and 1.307, RSMo.; and §160.2500, RSMo.

   b. An injunction prohibiting Defendants from enforcing or threatening to enforce its policies to require Bachman or other teachers to use gender specific names, pronouns, or gender identities, for students contrary to the speaker's religious or moral convictions.

   c. An injunction prohibiting Defendants from enforcing or threatening to enforce the current policies in a way that requires the Teacher to speak the students' message, or which would allow students unfettered discretion to compel teachers to use that student's individualized names, pronouns, and gender requests, on grounds that the violates the U.S. Constitution and the Missouri Constitution.

   d. Require Defendants, their officers, employees, agents, successors, and all other persons acting in concert or participation with them, to take such actions as may be necessary to prevent the recurrence of such unlawful conduct;

e. Requiring Defendants Obeng, Jackson and the Members of the Board of Education to undergo training in religious discrimination and reasonable accommodation;

f. An injunction requiring Defendants, their agents, officials, employees, and any other person acting on their behalf to purge (or correct, as law may require) Mrs. Bachman's personnel file of any negative reference related to the recommended discharge or actual discharge and causing it to reflect any performance rating Mrs. Bachman was entitled to in place of the discrimination.

225. Plaintiff further seeks an award in her favor consisting of:

a. Nominal damages from Defendants for the violation of Mrs. Bachman's rights under the United States Constitution and the Missouri Constitution;

b. Back pay;

c. Front pay;

d. Compensatory damages;

e. Retirement contributions and sums which the account would have earned during the relevant period;

f. Pay for leave required to be used because of Defendant's actions;

g. Lost training;

h. Applicable interest;

i. Any tax consequences of a lump-sum payment;

j. Punitive damages for Defendants' purposeful infringement of her federally protected rights;

k. Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements here pursuant to 42 U.S.C. § 1988, 29 C.F.R. § 1614.501(e), 28 U.S.C. § 1920, reasonable out-of-pocket expenses, expert fees, witness fees; and

l. All other further relief to which Plaintiff may be entitled.

226.    Plaintiff further seeks an Order for such other relief as the Court deems just and

equitable in these premises.

JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,
LAW OFFICES OF JONATHAN R.
WHITEHEAD, LLC
/s/ Jonathan R. Whitehead
Jonathan R. Whitehead, Mo. 56848
229 S.E. Douglas St., Ste. 210
Lee's Summit, Mo 64063
816.398.8305 - Phone
816.278.9131 – Fax
Jon@WhiteheadLawLLC.com
ATTORNEY FOR PLAINTIFF BACHMAN