**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| GERI BACHMAN, | |
| Plaintiff, | |
| vs. | |
| HICKMAN MILLS C-1 SCHOOL DISTRICT, AND | |
| YAW OBENG AND DERRICK JORDAN, SR., IN THEIR OFFICIAL AND PERSONAL CAPACITIES, AND | Case No. 4:23-cv-00931-FJG |
| CAROL GRAVES, BYRON TOWNSEND, ANN E. COLEMAN, IRENE C. KENDRICK, BETH BOERGER, AND BRANDON WRIGHT IN THEIR OFFICIAL CAPACITIES AS DIRECTORS OF THE BOARD OF EDUCATION, | |
| Defendants. | |

**SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS**

## I.     INTRODUCTION

This is an employment case in which Plaintiff asserts several claims based on conduct which occurred during her prior employment as a teacher with the Defendant Hickman Mills C-1 School District (the "District").  All of Plaintiff's claims stem from her refusal to comply with the District's directive that all teachers address students by their preferred names and pronouns. Other Federal courts have ruled identical claims fail as a matter of law and have granted motions to dismiss.  This Court should likewise dismiss Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a viable claim.

1

Plaintiff's Complaint asserts ten claims: Count I-"Free Speech Retaliation, Count-II-"Compelled Speech", Count III-"Free Exercise of Religion", Count IV-"Viewpoint Discrimination", Count V-"Religious Discrimination in Violation of Title VII", County VI-"Retaliation in Violation of Title VII", Count VII-"Missouri Student Religious Liberties Act", Count VIII-"Missouri Religious Freedom Restoration Act", Count IX-"Violation of Missouri Constitution", and  County X-"Violation of the First Amended of the United States Constitution Free Exercise of Religion".  In addition to making these claims against the District, Plaintiff also asserts these claims against Defendants Jordan and Obeng, in their official and personal capacities.   However, as explained below, all of these claims should be dismissed.

## II.　STANDARD OF REVIEW

**Rule 12(b)(6).**

 Fed. R. Civ. P. 12(b)(6) allows a defendant to move to dismiss where a Complaint fails to state a claim upon which relief can be granted.  When ruling on a  12(b)(6) motion, the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the  non-moving  party,  to  determine  whether  they  plausibly  give  rise  to  an entitlement of relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).   To survive a motion to dismiss, a Complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 570 (2007).

The  Complaint's  factual  allegations  must  be  sufficient  to  "raise  a  right  to  relief above the speculative level" and the motion to dismiss must be granted if the complaint does not  contain  "enough  facts  to  state  a  claim  to  relief  that  is  plausible  on  its  face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

### III.    ANALYSIS

#### A.    Counts I, II, and IV Fail to State a Claim Because the Alleged Speech was not Protected by the First Amendment.

Counts I, II, and IV all attempt to assert claims for infringement on Plaintiff's right to free speech in violation of the First Amendment of the U.S. Constitution. *See Janus v. American Federation of State, County, and Mun. Employees, Council 31*, 585 U.S. 878, 894 (2018) and Brooks v. Francis Howell School District, 599 F.Supp.3d 795, 802 (E.D. Mo. 2022). Accordingly, they will be addressed together. These claims fail as it is settled law Plaintiff's alleged speech is not protected by the U.S. Constitution because the speech was pursuant to her official duties and not a matter of public concern.

#### 1.    Law on Protection of Speech for Public Employees.

A public employer "may not discharge an employee on a basis that infringes [upon] that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972)). To establish employer retaliation in violation of the First Amendment, a public employee must prove: "(1) **he engaged in activity protected by the First Amendment**; (2) the defendants took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the

defendants' decision to take the adverse employment action." *Lyons v. Vaught,* 875 F.3d 1168, 1172 (8th Cir. 2017)(.

Courts addressing claims by public employees who contend they have been discharged for exercising their right to free speech must employ a two-step inquiry. *Dunn v. Carroll,* 40 F.3d 287, 291 (8th Cir.1994). First, the court must determine whether the speech may be described as "speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). An employee's speech touches on a matter of public concern when it is a "matter of political, social, or other concern to the community" at large. *Id.* The second inquiry is the interest of the employee in commenting on the matter of public concern outweighs the public employer's interest in promoting its efficiency by prohibiting the conduct. *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). Both of these questions are issues of law for the court to decide. *Shands v. City of Kennett,* 993 F.2d 1337, 1342 (8th Cir.1993), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994).

### 2. **Plaintiff's Speech is not Protected Because it was Pursuant to Her Official Duties.**

[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens on issues of public concern for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti v. Ceballos,* 547 U.S. 410, 420-21 (2006). Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. *Id.* In *Lane v. Franks,* 573 U.S 228, 238 (2014), the Court further explained that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those

4

duties." Under *Garcetti,* when a public employee speaks on a matter of public concern pursuant to official duties, the speech is *unprotected* against employer retaliation. If it was pursuant to his official duties, he has *no* First Amendment claim. *Id.*

Plaintiff's alleged speech is solely pursuant to her official duties as a teacher. How Plaintiff addressed students is clearly in the scope of her employment. This is not a situation where a teacher is commenting outside her employment (such as a letter to the local newspaper). It is evident from Plaintiff's Complaint the speech at issue was pursuant to her official duties, and therefore not protected; as shown below, Federal courts have found claims for this exact speech to be unprotected.

*Kluge v. Brownsburg Community School Corporation* is similar to the present action. In *Kluge*, the teacher brought almost identical claims against the defendant school due to adverse employment actions because of his refusal to abide by the school district's policy mandating teachers refer to students by the preferred names and gender pronouns. Just as in the present case, the plaintiff brought several claims against the school, including claims for retaliation under the First Amendment, content and viewpoint discrimination under the First Amendment, and compelled speech under the First Amendment (collectively the "Speech Claims"). On the school's motion, the court dismissed the plaintiff's Speech Claims. One of the two bases on which the court dismissed plaintiff's Speech Claims was the speech was not protected because it was pursuant to plaintiff's official duties as a teacher. The *Kluge* courts explained its ruling as follows:

> **Here, Mr. Kluge has failed to state any claim under the First Amendment because, as a matter of law, the speech at issue is not constitutionally protected**. Importantly, he is not asserting that he was disciplined for criticizing or opposing the Policy, but that he was disciplined for refusing to follow it in his classroom by refusing to call students by the first names listed in PowerSchool.

**Mr. Kluge's own allegations establish that the way in which he addresses students is part of his official duties as a teacher. Mr. Kluge expressly alleges that BCSC sought to regulate his interactions with students inside school and in the context of the school day or school activities.** [Filing No. 15 at 15 (alleging that BCSC applies its "speech code policies to regulate all interactions faculty members have with students in the classroom or within the school").] **While addressing students by name may not be part of the music or orchestra curriculum, it is difficult to imagine how a teacher could perform his teaching duties on any subject without a method by which to address individual students. Indeed, addressing students is necessary to communicate with them and teach them the material—as the Seventh Circuit has stated, how teachers relate to students *is* part of their jobs, and running a classroom is a "core academic dut[y].**" *Wozniak*, 932 F.3d at 1010. **Thus, the speech at issue was part of Mr. Kluge's official duties, and this alone is sufficient to preclude any free speech claim under the First Amendment.**

*Kluge v. Brownsburg Community School Corporation*, 432 F.Supp.3d 823, 838-839 (S.D. Ind. 2020).

In another case similar to the present case, *Willey v. Sweetwater County School District #1 Board of Trustees*, 2023 WL 9597101, at *8 (D. Wyo. 2023), a teacher/parent brought claims against her employer school district regarding plaintiff's adherence to the District's policy that staff must use a student's preferred/chosen name or pronoun in all communications. The plaintiff's claims included a claim for violation of her right to free speech. The defendant school district filed a motion to dismiss. Citing *Kluge*, the court dismissed plaintiff's claim for violation of her right to free speech because the speech was not protected because it was pursuant to her duties as a teacher. The court stated

> The Court is not persuaded that calling students a preferred name, including one that does not align with a student's biological sex, forces Mrs. Willey to forgo her First Amendment right to free speech.

\*\*\*

6

**Accordingly, the Court finds that referring to students by their preferred names and pronouns in the classroom and in written, electronic, and verbal communications relating to the classroom, are part of a teacher's official duties**. Likewise, communicating with parents is also part of a teacher's official duties. Thus, under *Janus*, the District may require its teachers to deliver a lawful message, including referring to students by preferred names and pronouns. Failure to abide by this policy is not speech protected by the First Amendment. The Court finds that Mrs. Willey has failed to state a claim upon which relief may be granted, and so Ms. Willey's Fourth Claim is dismissed.

*Id.* at *8-9 (emphasis added).

Just as the plaintiffs in *Kluge* and *Willey*, Plaintiff's Complaint in this case establishes her speech was pursuant to her official duties as a teacher for the District. Accordingly, Plaintiff's speech is not protected by the First Amendment.

**3. Plaintiff's Speech is not a Matter of Public Concern.**

The fact Plaintiff's speech is not protected under the First Amendment because it is part of her official duties is sufficient alone to dismiss her claims. However, the second reason these claims fail as a matter of law is because the speech is not a matter of public concern.

In *Kluge*, the court also dismissed plaintiff's speech claims because the speech (which is the same speech at issue in the present action) was not a matter of public concern. The court in *Kluge* explained

However, **the Court also concludes that Mr. Kluge's choice as to how to address a given student did not involve a matter of public concern**. To be sure, issues relating to the treatment of individuals based on their gender identity are of great public importance. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, ––– U.S. ––––, 138 S. Ct. 2448, 2476, 201 L.Ed.2d 924 (2018) (recognizing that "gender identity" is a "sensitive political topic[ ]" that is "undoubtedly [a] matter[ ] of profound value and concern to the public"). However, Mr. Kluge was not conveying a message concerning such matters when he refused to call students by their names as listed in PowerSchool or referred to students by last name only, because **the act of**

7

**referring to a particular student by a particular name does not contribute to the broader public debate on transgender issues.** Instead, choosing the name to call a student constituted a private interaction with that individual student and a private statement about Mr. Kluge's subjective perception of that student. In addition, according to Mr. Kluge's own allegations, the only point of his speech was to address students. He did not tell students that he had opinions about using transgender students' preferred names or explain why he was using last names only. [Filing No. 15 at 10.] **Thus, Mr. Kluge's speech—merely stating (or refusing to state) names and pronouns without explaining that his opposition to "affirming" transgender students was the reason for doing so— adds little to the public discourse on gender identity issues, and therefore is not the kind of speech that is valuable to the public debate.** *Cf.* *Garcetti*, 547 U.S. at 420, 126 S.Ct. 1951 (acknowledging that underlying the public concern inquiry is "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion").

Because the speech at issue was pursuant to Mr. Kluge's official duties as a public employee and did not involve a matter of public concern, he cannot maintain a cause of action for his employer's regulation of or reaction to his speech. *See* *id*. at 418, 126 S.Ct. 1951

*Kluge* at 839 (emphasis added).

Similarly, Plaintiff's stating (or refusing to state) students' names or pronouns does not add to the public discourse on gender identity issues, and therefore is not the kind of speech that is valuable to the public debate. Accordingly, such speech is not a matter of public concern, and the claims fail as a matter of law. *See Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983).

Counts I, II and IV of Plaintiff's Complaint fail to state a viable claim and should be dismissed.

**B.**   **Counts III, IX and X Fail to State a Claim Because Adhering to Anti-Discrimination Policies is not an Infringement Upon Religion.**

8

The District's directive that staff refer to students' by preferred names and pronouns was not an infringement on Plaintiff's free exercise of religion because the District's directive was (1) neutral and generally applicable as it applied to all faculty, not just to faculty members of a certain religion, and (2) rationally related to the District's attempt to follow enacted laws regarding gay and transgender rights in school settings.

## 1. Law on Free Exercise of Religion for Public Employees.

The Free Exercise clause of the First Amendment requires that "Congress shall make no law ... prohibiting the free exercise [of religion]." *U.S. Const. amend. 1.* This clause was incorporated by the Fourteenth Amendment and now applies to state and local governments, including public-school districts. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). "A plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.' " *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421–22 (2022). Government action based upon neutral, generally applicable rules are subject to rational basis review, even if the application of the neutral rule "has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 535, 113 S. Ct. 2217, 2228, 124 L. Ed. 2d 472 (1993). Under the rational basis test, policies or directives carry a "strong presumption of validity" and the District is given "wide latitude" to enact social and economic policies if there is any reasonably conceivable state of facts that could provide a rational basis for the enactment's classifications. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Legislative choices are not subject to courtroom fact finding and may be

based on rational speculation unsupported by evidence or empirical data. *Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

A government policy will not qualify as neutral if it is 'specifically directed at ... religious practice.' A policy can fail this test if it "discriminate[s] on its face," or if a religious exercise is otherwise its 'object.' A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.' Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny. *Id.*

### 2.  The Directive was Neutral and Generally Applicable.

As alleged in Plaintiff's Complaint, the school's directive (referred by Plaintiff as a "policy") was that teachers must refer to students by the students' preferred names and pronouns. There is no allegation the directive was only applied to Christians or to a religious practice. Instead, the directive was applied to all faculty members.[1]

Knowing Plaintiff's requirement to prove the directive was not neutral or generally applicable, Plaintiff resorts to wordplay and conclusory statements meant to give the false impression the directive was not generally applicable.   Plaintiff alleges in paragraph 68 of Plaintiff's Complaint, "Defendants' policy, at least as applied here is not neutral toward religion or generally applicable; other teachers were allowed to use a student's legal name, or another name that was not inconsistent with a particular student's sex . . ."  In regard to the conclusory allegation "Defendants' policy, at least as applied here is not neutral toward religion or generally applicable," such a conclusory allegation devoid of supporting facts is insufficient to state a

---

[1] Although it is not a consideration on a motion to dismiss, Defendants note all teachers at the school, including Plaintiff, were informed of this directive at the beginning of the school year.

cause of action.  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The remainder of the paragraph gives the false impression Defendants permitted other teachers to violate the directive.  The issue is not whether teachers were allowed to call a student by the student's legal name or other name.  The issue is whether other teachers were permitted by Defendants to refer to students by their non-preferred names and pronouns when communicating with them.[2] Plaintiff does not allege other teachers were permitted by Defendants to refer to students by their non-preferred names and pronouns when communicating with the students.

In *Kluge v. Brownsburg Community Sch. Corp.*, the district court considered a teacher's claims that his schools' requirement to use student's chosen names "conflicted with his religious beliefs against affirming gender dysphoria," in violation of the Free Exercise Clause. *Id.* at 834. The Court granted defendants' motion to dismiss on this issue, finding the school's directive was neutral and generally applicable because "**it applie[d] to all faculty, not just to faculty members of a certain religion**." *Id.* at 839. "**[E]very teacher, regardless of religious belief, was required to address every student by the name" that the students chose, 'regardless of what that name was or why.'** *Id.* The court dismissed the teacher's Free Exercise claim based on this policy.

Just as the directive in *Kluge*, the District's directive is neutral and generally applicable. The District's directive applied to every teacher regardless of religious belief and the directive was to address students by the name chosen regardless of what the name was or why it was chosen.  Additionally, the directive is rationally related to the District's attempt to follow laws regarding gay and transgender rights in the school setting, namely Title IX.   Plaintiff does not

---

[2] Defendants note no teachers were allowed to disobey the directive.  If by chance another teacher disobeyed the directive without the knowledge of Defendants, it is of no legal relevance.

11

allege the directive was adopted to burden religious beliefs or conduct. For these reasons, Counts III and X should be dismissed for failure to state a claim.

Count IX should be dismissed for the same reasons as Counts III and X. In Count IX, Plaintiff claims the conduct of Defendants violated various sections of the Missouri Constitution, including Plaintiff's right to worship, express her religious beliefs, and express her religious conscience.". Generally, the courts have examined claims of violations of Religious Rights under the Missouri Constitution similarly to how they review them under the U.S. Constitution. *See Boone v. State*, 147 S.W.3d 801, 805-06 (Mo. Ct. App. 2004) (upholding state sexual offender registration program); *Oliver v. State Tax Comm'n of Missouri*, 37 S.W.3d 243, 247-52 (upholding requirement that state tax returns be signed under oath or affirmation); *Clayton by Clayton v. Place,* 884 F.2d 376, 381 (8th Cir. 1989) (construing Establishment Clause and article I, section 7, together). For the reasons detailed above, Plaintiff does not have any claims under the Federal Constitution or under the Missouri Constitution as these claims are treated in similar fashion.

Accordingly, Counts, III, IX and X should be dismissed for failure to state a claim.

**C.** **Count V Fails to State a Claim Because as a Matter of Law the District did not Engage in Religious Discrimination.**

Count V for religious discrimination in employment in violation of Title VII appears to allege two claims (1) Defendants took adverse action against Plaintiff because of her religious beliefs, and (2) Defendants failed to provide a reasonable religious accommodation. As explained below, both claims fail as a matter of law.

**1.** **Law on Religious Discrimination under Title VII.**

To establish a prima facie case of religious discrimination under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 792, 93 S. Ct. 1817, 1819, 36 L. Ed. 2d 668 (1973) framework, a

plaintiff must show: (1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *See Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012). Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner. *Id.* at 853–54.

Under Title VII, the term "religion" encompasses "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). In a Title VII analysis, courts must distinguish between those beliefs that constitute religion, which are protected, and those that are "essentially political, sociological, philosophical" or "merely personal moral code[s]," as these are not afforded the same weighty protections. *See United States v. Seeger*, 380 U.S. 163, 172 (1965). To determine whether a belief warrants religious protection, "the Eighth Circuit considers whether the [belief] address[es] 'fundamental and ultimate questions having to do with deep and imponderable matters,' if the teachings are comprehensive in nature,' or isolated, and if there are 'certain formal and external signs' present." *Kiel v. Mayo Clinic Health Sys. Se. Minnesota*, 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023).

### 2. Plaintiff has not Pled a Cognizable Title VII Discrimination Claim.

Plaintiff has not pled a cognizable Title VII religious discrimination claim. Not only has she failed to plead facts to support two of the elements of her claim, she has pled facts that are in opposition to her meeting the elements of this claim. The District issued a directive that teachers were to call students by their chosen names/pronouns. Plaintiff readily admits she did not follow the directive and instead called students by the names she believed were appropriate. Therefore,

the record demonstrates she did not meet the District's legitimate expectations she call students by their chosen name/pronoun.

Plaintiff has also not pled facts that give rise to an inference of discrimination. She has not alleged teachers with different religious beliefs were allowed to not follow the directive. Plaintiff has failed to plead facts to meet her *prima facia* case; therefore, Count V should be dismissed for failure to state a claim.

### 3. Law on Religious Accommodation Under Title VII.

When a plaintiff brings a Title VII religious discrimination claim based on failure to provide reasonable accommodation, the Eighth Circuit employs a three-part test set forth in *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). Plaintiffs must show (1) they have a bona fide religious belief that conflicts with an employment requirement; (2) they informed the employer of this belief; and (3) they were disciplined for failing to comply with the conflicting requirement. *Id.* (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 65–66, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)). Once a plaintiff has alleged a *prima facie* failure to accommodate a claim under *Jones*, the burden then switches to the defendant to show accommodating the plaintiff's religious beliefs would result in undue hardship. *See Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000).   If the sought accommodation is an undue hardship the claim fails. *Id*.

### 4. Plaintiff's Requested Accommodation is an Undue Burden as a Matter of Law.

Requiring the violation of another law is an undue hardship. *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000).  Notably, the Eighth Circuit found even requiring an employer to seek an exemption of a law is an undue hardship.  *Id.*  Here, the District's directive was instituted to comply with federal (and possibly state) anti-discrimination laws.  Plaintiff's alleged proposed accommodation -to be allowed to refer to students by names and pronouns that do not

conform with their gender identity would be a violation of discrimination laws. Accordingly, as a matter of law, the sought accommodation is unduly burdensome.

The *Seaworth* case is instructive. In *Seaworth*, the Eighth Circuit determined whether a lower court's granting of judgment on the pleadings was appropriate. The plaintiff brought a Title VII religious discrimination claim against an employer who did not hire him because he refused to give the employer his social security number. The plaintiff refused to give his social security number because he claimed it represents the "mark of the beast" as described in the Christian Bible's Book of Revelation. The plaintiff sought an accommodation that he not be required to provide his social security number. The trial court granted the employer's motion for judgment on the pleadings on the bases (1) because the requirement was imposed by the IRS, it was not a requirement of the employer, and (2) the sought accommodation was an undue hardship. The Eighth Circuit affirmed the lower court's ruling, stating

> **We also agree with the District Court that defendants need not accommodate Seaworth's religious beliefs. Requiring defendants to violate the Internal Revenue Code and subject themselves to potential penalties by not providing Seaworth's SSN on information returns results in undue hardship.** See *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 830–31 (9th Cir.1999) (employer not liable for not hiring person who refused for religious reasons to provide his SSN, because accommodating applicant's religious beliefs would cause employer to violate federal law, which constituted "undue hardship"); I.R.C. §§ 6109(a)(1) (any person required to make tax return, statement, or other document with respect to another person, shall include in return or document that person's SSN); 6721(a)(1) & (a)(2)(B) (failure to include all required information on "information return" subjects filer to $50 penalty); 6723 (penalty for failure to comply with information-reporting requirements).
>
> Seaworth argues that defendants could seek a reasonable-cause waiver under I.R.C. § 6724(a), which provides that "no penalty shall be imposed [for failure to include an SSN on an information return] if it is shown that such failure is due to reasonable cause and not to willful neglect." Even if a waiver could be obtained, **we**

> **think that the expense and trouble incident to applying for it imposes a hardship that is more than de minimis, as a matter of law.**

*Seaworth* v. 1057 (emphasis added).

Just like the plaintiff in *Seaworth*, Plaintiff's accommodation violates the law, and therefore it is an undue burden as a matter of law. The federal government requires non-discrimination and equal treatment on the basis of sex/gender. *See e.g.* U.S. Const. amend XIV 20 U.S.C. 1681 *et. seq., Bostock v. Clayton County* 140 S. Ct. 1731 (2020) and Executive Order 14021. After the Supreme Court issued the *Bostock* opinion, the Department of Education declared it and the Department of Justice considers prohibited sex discrimination under Title IX to include a prohibition against discrimination based on sexual orientation and gender identity. *See Federal Register*, attached as **Exhibit A**. While *Bostock* dealt with discrimination under Title VII, Courts have held sex discrimination under Title IX covers both sexual orientation and sexual identity. *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.,* 57 F.4th 791, 797 (11th Cir. 2022).

Condoning discrimination to avoid alleged discrimination is a no-win scenario that is not legally required. In allowing Plaintiff to discriminate against transgender students (by calling them the name she chooses) the District would violate the non-discrimination laws noted above. In her Complaint, Plaintiff tries to couch her requested accommodation in many terms; however, her request was simply to allow her to engage in discriminatory behavior in violation of Title IX. Allowing this would have caused the District to violate Title IX, which in turn would subject the District to liability in suits brought by students and penalties (including possibly withholding of federal funds) by the Department of Education and/or Department of Justice. Accordingly,

16

allowing Plaintiff the requested accommodation would be an undue hardship for the school district as her requested accommodation would be in violation of Title IX. [3]

**5.** **Plaintiff's Claims Against Defendants Jordan and Obeng Fail to State a Claim Because Individuals Cannot be Liable Under Title VII.**

Plaintiff's Title VII claims are made against all the Defendants, including Defendants Jordan and Obeng in their individual capacities. Defendant Jordan was the school's principal and Defenant Obeng was the District Superintendent. Therefore, both were supervisors to Plaintiff. However, it is well settled law supervisors cannot be held liable for violations of Title VII. *See Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998)("we noted in a per curiam opinion that '[o]ur Court quite recently has squarely held that supervisors may not be held individually liable under Title VII.'"). Accordingly, Count V fails to state a claim against Defendants Jordan and Obeng and must be dismissed.

**D.** **Count VI Fails to State a Claim because Plaintiff has not Pled she Engaged in any Protected Activity Under Title VII.**

**1.** **Law on Title VII Retaliation.**

To establish retaliation under either Title VII, a plaintiff must prove (1) she engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action. *See Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).

Under Title VII, an employee engages in protected activity when she either (1)"oppose[s] any practice made an unlawful employment practice by [Title VII]" or ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing

---

[3] The Court need not conclude allowing Plaintiff to discriminate against students would violate Title IX. The Court need only recognize that allowing Plaintiff to discriminate against students would subject the District to lawsuits and penalties.

under [Title VII]. 42 U.S.C. § 2000e–3(a). "The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." *Barker v. Mo. Dep't of Corr.,* 513 F.3d 831, 834 (8th Cir. 2008) (internal quotations marks omitted). Under Title VII, "protected activity" includes opposition to discriminatory employment practices prohibited under Title VII. *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007). "Merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation." *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care,* 908 F.3d 1098, 1102 (8th Cir. 2018). Notably, simply refusing to comply with the conflicting employment requirement is also not "oppos[ing]" an unlawful "practice" under Title VII. *See Equal Emp. Opportunity Comm'n v. Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 790 (E.D. Ark. 2022).

### 2. Plaintiff did not Engage in Protected Activity.

Plaintiff pled she engaged in activity protected by Title VII in her request for an accommodation and the exercise of her religious beliefs and practices. However, she did not plead (as necessary to show she engaged in statutorily protected activity) that she opposed the allegedly unlawful denial of a religious accommodation. Her allegation is Defendants merely retaliated against her because of her religious accommodation request. However, simply requesting an accommodation does not equate to opposing a practice made unlawful by Title VII. Therefore, she did not engage in any activity protected by Title VII, and she fails to state a claim as she does not meet the necessary elements to have a claim for retaliation under Title VII.

### 3. Title VII Claim against Jordan and Obeng Fail as Matter of Law.

As noted above, it is settled law supervisors cannot be held liable under Title VII. *See Bates,* at id. Accordingly, Count VI must be dismissed against Defendants Jordan and Obeng.

**E.** **Counts VII and VIII Fail to State a Claim because the MHRA is Plaintiff's Exclusive State Law Remedy for Claims Against Her Employer and the RFRA does not Apply to the Defendants or the Directive.**

Plaintiff's claims under the Missouri Student Religious Liberties Act (Count VII) and the Missouri Religious Freedom Restoration Act (VIII) both fail as a matter of law because the Missouri Human Rights Act is the exclusive remedy for claims against her employer. *See* § 213.070 RSMo and *Brandon v. Bd. of Educ. of City of St. Louis*, 2023 WL 4104293 at *19 (E.D. Mo. 2023),

The Missouri Human Rights Act (MHRA) states: "This chapter, in addition to chapter 285 and chapter 287, **shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship**." RSMo § 213.070 (emphasis added). Chapter 285 is the Worker's Compensation Act and Chapter 287 is the Public Employee Whistleblowers Act.

In *Brandon v. Bd. of Educ. of City of St. Louis*, 2023 WL 4104293 at *19 (E.D. Mo. 2023), the defendant asserted claims could not be brought by an employee against an employer under RSMo. §1.302 (the Religious Freedom Restoration Act, the "RFRA") as the claims are preempted by the MHRA declaration that it is the exclusive remedy for claims arising out the employment relationship. The *Bradon* court, went to great lengths to discuss whether the MHRA pre-empted claims under §1.302 RSMo.

In a lengthy discussion of statutory interpretation principals, the count ultimately found "the text of the Missouri Human Rights Act clearly purports to offer, along with two other statutes, the *exclusive* remedy for claims arising from an employment relationship. § 213.070 RSMo. In line with this finding, the court held no cause of action can be brought under § 1.302 RSMo by an employee against an employer." Of note, the Eighth Circuit has held the Federal

19

RFRA is pre-empted by Title VII; therefore, Federal RFRA claims in the employment context are pre-empted. *Harrell v. Donahue*, 638 F.3d 975, 984 (8th Cir. 2011).

In this case, Plaintiff is attempting to assert claims under § 1.302 RSMo against her former employer. *Brandon* makes clear she cannot bring this cause of action in the employment context. Her sole remedy for her claim is the MHRA. While she has not asserted any violations of the MHRA, she could have asserted these claims had she so chosen. Furthermore, extending the reasoning of the *Brandon* decision to her claim under Missouri Student Religious Liberties Act (§ 160.2500 RSMo), this claim should also be dismissed. Plaintiff is asserting this claim against her former employer for an alleged act of discrimination that occurred in the course of her employment. This clearly fits with the MHRA being her exclusive remedy provision. For these reasons, Counts VII and VIII should be dismissed for failure to state a claim.

Additionally, in regard to Count VIII, the statute explicitly does not apply to Defendants or to the directive. First, the RFRA, § 1.302 RSMo, does not apply to Defendants. Section 1.307.1 RSMo states "Section 1.302 and this section apply to all state and local laws, resolutions and ordinances and the implementation of such laws, resolutions, and ordinances, whether statutory or otherwise, and whether adopted before or after August 28, 2003." While the directive at issue is meant to comply with federal and state laws, it is not a state or local law, resolution or ordinance, nor is it an implementation of such laws, resolutions or ordinances. Accordingly, the RFRA does not apply to Defendants or the directive. Additionally, § 1.302.1 (A) RSMo states

> 1. A governmental authority may not restrict a person's free exercise of religion, unless:
> (1) The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and
> (2) The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling

20

governmental interest, and is not unduly restrictive considering the
relevant circumstances.

As noted above, the directive was a rule of general applicability and did not discriminate against
religion or among religions. Additionally, since the District's directive was to comply with Title
IX, as a matter of law it was essential to compelling governmental interest and was not unduly
restrictive.

**F.     All Claims Against Defendants in their Official Capacities Fail to State a Claim Because they are Redundant.**

In Counts I-IX, Plaintiff has brought claims against individuals in their official capacities
in addition to the District. However, it is settled law such claims against the individuals in their
official capacities should be dismissed because they are redundant to the claims against the
District. A suit against a government officer in his official capacity is functionally equivalent to
a suit against the employing governmental entity. *See Baker v. Chisom,* 501 F.3d 920, 925 (8th
Cir.2007). When a governmental entity is named as a defendant in a suit as well as individuals in
their official capacity the actions against the individuals should be dismissed as redundant. *See
Artis v. Francis Howell N. Band Booster Ass'n, Inc.,* 161 F.3d 1178, 1182 (8th Cir. 1998).

In this case Plaintiff has named the District as a Defendant as well as Yaw Obeng, Derrik
Jordan, Sr., Carol Graves, Bryon Townsend, Ann Coleman, Irene Kendrick, Beth Boerger, and
Brandon Wright in their official capacities. The claims against the individuals in their official
capacities should be dismissed as redundant.

**G.     Count X Should be Dismissed Based on Qualified Immunity**

Qualified immunity shields a government official from liability and the burdens of
litigation unless the official's conduct violates a clearly established constitutional or statutory
right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818,

102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is immunity from suit, not a defense to liability. *Mitchell v. Forsyth,* 472 U.S511, 526 (1985). It is designed to protect governmental officials from costly and harassing litigation and extends to "all but the plainly incompetent or those who knowingly violate the law." *Harlow* at 814. Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). For a constitutional right to be clearly established, its contours

> must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Courts have discretion to decide which part of the inquiry to address first. *Pearson* at 236, 129 S.Ct. 808.

In the present case, Plaintiff has failed to plead the existence of a clearly established constitutional right which was violated by the conduct of any Defendant much less the individually named Defendants. Specifically, as shown above, the directive did not violate her freedom of religion as it was neutral and generally applicable to all employees.

It is of particular note, there are no cases within the Eighth Circuit or Missouri State Courts finding this type of directive violates any Constitutional rights. Not only is there no law finding this type of directive violates any law, as detailed above, this directive is necessary to avoid violating Title IX and possibly other statutes. Accordingly, as a matter of law, Defendants Jordan and Obeng are entitled to the protections afforded by Qualified Immunity.

## IV.   <u>CONCLUSION</u>

Every school day educational institutions and their administrators walk a tight rope balancing the rights of students and staff. Balancing religious and individual rights to avoid the burdens of a claim of discrimination from one side or the other is becoming an overwhelming everyday task.  However, in this case the balance of rights has been maintained in accordance with the applicable law.  The authorities relied on by Defendants give the Court clear direction permitting the dismissal of Plaintiff's claims. For the reasons set forth above, the Defendants are entitled to dismissal of Counts I-X brought against them by Plaintiff.

Respectfully submitted,

**FISHER, PATTERSON, SAYLER & SMITH, LLP**

/s/ Paul F. Gordon

| | |
|---|---|
| Steven F. Coronado | MBN 36392 |
| Paul F. Gordon | MBN 47618 |

9393 W. 110th, #300
Corporate Woods, Bldg. 51
Overland Park, KS 66210
Telephone:  (913) 339-6757
Facsimile:   (913) 660-7919
scoronado@fpsslaw.com
pgordon@fpsslaw.com

ATTORNEYS FOR DEFENDANTS

23

## CERTIFICATE OF SERVICE

  I hereby certify that the above and foregoing was filed via the ECF Filing system on April 1, 2024, which will send notice to:

Jonathan R. Whitehead
Law Offices of Jonathan R. Whitehead,
LLC
229 S.E. Douglas St., Ste. 210
Lee's Summit, Mo 64063
816.398.8305 - Phone
816.278.9131 – Fax
Jon@whiteheadlawLLC.com
Attorney for Plaintiff Bachman

         */s/* Paul F. Gordon
         ATTORNEY FOR DEFENDANTS