# In the United States District Court
## For the Western District of Missouri
## Western Division
## At Kansas City

Geri Bachman,

      Plaintiff,

vs.

Hickman Mills C-1 School District, et al.

      Defendants.

Case No.      4:23-cv-00931-FJG

## <u>Plaintiff's Suggestions in Opposition to Defendants' Motion to Dismiss</u>

Law Offices Of
Jonathan R Whitehead LLC

Jonathan R. Whitehead (#56848)

229 S.E. Douglas St., Ste. 210
Lee's Summit, Missouri 64063
Phone: 816-398-8305
Fax: 816-278-9131
jon@whiteheadlawllc.com

Attorney for Plaintiff Geri Bachman

# Table of Contents

Table of Authorities...................................................................ii

Introduction.......................................................................... 1

Summary of Argument ........................................................ 1

Standard.............................................................................. 3

Argument ............................................................................ 3

I.   Plaintiff's Constitutional Claims Should Not be Dismissed ...... 3

   A.   Plaintiff states a claim for violations of the Free Exercise
        Clause. (Responding to Defs.' Br. Pt. III(B)) .........................3

   B.   Plaintiff states a claim for violations of the Free Speech Clause.
        (Responding to Defs.' Br. Pt. III(A)).......................................6

      1.   Hickman Mills is compelling support of a third-party's
           message; it is not establishing government speech.........................8

      2.   Plaintiff's speech was not part of the "official duty" of
           teachers in the District................................................9

II.  Plaintiff's Title VII claims should not be dismissed ...............10

   A.   Plaintiff states a claim for Title VII religious Discrimination.
        (Responding to Defs. Br. Pt. III(C)) ...................................... 10

   B.   Plaintiff pleads religious discrimination by failure to
        accommodate. (Responding to Defs. Br. Pt. III(C)(3), (4)).................... 13

   C.   Plaintiff pleads Title VII retaliation. (Responding to Defs. Br. Pt
        III(D))........................................................................... 15

III. Defendants Jordan and Obeng are not entitled to Qualified
     Immunity. (Responding to Defs. Br. Pt. III(G)) ............................ 17

IV. Plaintiff's State Law Statutory Claims Should not be Dismissed.
    (Responding to Defs. Br. Pt. III(E)) ............................................18

V.   Claims against individuals ................................................. 19

Conclusion.......................................................................... 19

i

# Table of Authorities

## Cases

*303 Creative LLC* v. *Elenis*, 600 U.S. 570 (2023) ........................................................................9

*Adeyeye* v. *Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013) ..........................................15

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) ..........................................................................................5

*Beasley* v. *Warren Unilube, Inc.*, 933 F.3d 932 (8th Cir. 2019) ....................................................13

*Blomker* v. *Jewell*, 831 F.3d 1051 (8th Cir. 2016) ..............................................................5, 12, 17

*Bostock* v. *Clayton County, Georgia*, 590 U.S. 644 (2020) ...........................................................20

*Brandon* v. *Bd. of Educ. of City of St. Louis*, No. 4:22-CV-00635-SRC, 2023 WL 4104293 (E.D. Mo. June 21, 2023) .....................................................................................................................19

*Burnham* v. *Ianni*, 119 F.3d 668 (8th Cir. 1997) ...................................................................18, 19

*Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U.S. 520 (1993) .............................................6

*Clegg* v. *Arkansas Dept. of Correction*, 496 F.3d 922 (8th Cir. 2007) ..........................................17

*Crawford* v. *Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271 (2009) ..........................17

*Elam* v. *Regions Fin. Corp.*, 601 F.3d 873 (8th Cir. 2010) ...........................................................13

*Garcetti* v. *Ceballos*, 547 U.S. 410 (2006) ...........................................................................9, 10, 11

*Gibson* v. *Am. Greetings Corp.*, 670 F.3d 844 (8th Cir. 2012) ................................................13, 17

*Groff* v. *DeJoy*, 600 U.S. 447 (2023) .........................................................................................7, 15

*Harlow* v. *Fitzgerald*, 457 U.S. 800 (1982) ..................................................................................19

*Harrell* v. *Donahue*, 638 F.3d 975 (8th Cir. 2011) .......................................................................15

*Henley* v. *Brown*, 686 F.3d 634 (8th Cir. 2012) ...........................................................................20

*Ingram* v. *Arkansas Dep't of Correction*, 91 F.4th 924 (8th Cir. 2024) ...................................5, 12, 14

*Janus* v. *Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878 (2018) ..............passim

*Johnson* v. *Humphreys*, 949 F.3d 413 (8th Cir. 2020) ..................................................................17

*Kennedy* v. *Bremerton Sch. Dist.*, 597 U.S. 507 (2022) ...........................................................passim

*Kluge* v. *Brownsburg City. Sch. Corp.*, 432 F.Supp.3d 823 (S.D. Ind. 2020) ...........................4, 7, 8

*Kluge* v. *Brownsburg Cmty. Sch. Corp.*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023) ............................................................................................................................ 4, 7

*Lane* v. *Franks*, 573 U.S. 228 (2014) ............................................................................... 8

*Lee* v. *Seasons Hospice*, No. 22-CV-1593 (PJS/DJF), 2023 WL 6387794 (D. Minn. Sept. 29, 2023) .......................................................................................................................... 15, 16

*Lindsey* v. *City of Orrick*, 491 F.3d 892 (8th Cir. 2007) ........................................... 11, 12

*McGee* v. *Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo.*, 471 F.3d 918 (8th Cir. 2006) ....... 9

*Meriwether* v. *Hartop*, 992 F.3d 492 (6th Cir. 2021) ..................................................... 10

*Norgren* v. *Minnesota Dep't of Hum. Servs.*, 96 F.4th 1048 (8th Cir. 2024) ........................ 9, 13, 17

*Pickering* v. *Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563 (1968) .... 10, 19

*Ricard* v. *USD 475 Geary Cnty., KS Sch. Bd.*, No. 5:22-CV-04015-HLT-GEB, 2022 WL 1471372 (D.Kan. May 9, 2022) ................................................................................................. 5

*Rodgers* v. *U.S. Bank, N.A.*, 417 F.3d 845 (8th Cir. 2005) ........................................... 13

*Seaworthy* v. *Pearson*, 203 F.3d 1056 (8th Cir. 2000) ................................................... 16

*Texas Dept. of Cmty. Affairs* v. *Burdine*, 450 U.S. 248 (1981) ...................................... 13

*Tinker* v. *Des Moines Indep. Cmty. School Dist.*, 393 U.S. 503 (1969) ......................... 8, 19

*Torgerson* v. *City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ..................................... 13

*West Virginia Bd. of Ed.* v. *Barnette,* 319 U.S. 624 (1943) ............................................. 4

*Widmar* v. *Vincent*, 454 U.S. 263 (1981) ........................................................................ 6

## Statutes

42 U.S.C. § 2000e(j) ........................................................................................................ 15

42 U.S.C. 2000e, *et seq.* ............................................................................................ 4, 5, 12

RSMo. §168.021 .............................................................................................................. 13

RSMo. §213.070 .............................................................................................................. 19

## Regulations

34 CFR 106.34(c), (e) ...................................................................................................... 16

## Constitutional Provisions

U.S. Const. amend I. ...........................................................................passim

## Introduction

Geri Bachman taught girls Physical Education for Hickman Mills School District in 2021-2022. ¶21-22. She told the Administration her Christian faith prevented her from speaking of one[1] female student as if she were a boy. ¶ 2.[2]

Other teachers were allowed to use the student's birth name in their classes, or names more consistent with the student's sex. ¶¶ 97-100, 160-1. The student used her birth name in written correspondence to Bachman. ¶99. The District's 'official' record system continued to use the student's birth name and gender. ¶5, 96, 108, 146, 158. The student continued in a Physical Education class of girls. ¶¶ 8, 11-2, 96, 147, 161.

Bachman thought she had reached agreement with Administrators by which she could avoid using gendered language with the student in class. ¶¶ 79-81, 71. But Bachman was soon reprimanded, ¶89, told that she could not talk about the matter to student parents, ¶ 102, and ultimately terminated, ¶ 112.

Plaintiff filed suit, listing ten ways these the actions violated the law. Defendants have moved to dismiss all her claims under FRCP 12(b)(6).

For the below reasons, Defendants' motion should be denied.

## Summary of Argument

The key fact here is the unbridled discretion the District vested in students to decide what words and messages a teacher (like Plaintiff) must say – or not say. ¶ 204. The District was not adopting an official government message. Rather, students announced "preferences" to each

---

[1] Bachman's termination letter said two students had raised complaints by the end of the year, but many of the facts developed around the request of one student, Student A in the Complaint.

[2] Unless indicated otherwise, all "¶" references are to paragraphs in the Complaint; all "Br." references are to Defendants' Suggestions in Support of its Motion.

teacher, preventing any generally applicable policy. ¶¶ 143-4, 159 (student's individualized assessments were not generally applicable).

The entire system was based on the kind of "individualized exemptions" that are not generally applicable or neutral to religion and cannot survive strict scrutiny. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022); U.S. CONST. amend I. Plaintiff Bachman has clearly pleaded that her rights under the Free Exercise Clause of the First Amendment were violated. *Id.*

She also states a Free Speech claim. Government cannot compel teachers to speak a third party's message without the teacher's consent. *Janus* v. *Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892 (2018). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in ... matters of opinion or force citizens to confess by word or act their faith therein." *Id.*, *citing West Virginia Bd. of Ed.* v. *Barnette,* 319 U.S. 624, 642 (1943) (emph. added in *Janus*). Even though Bachman's speech occurred at work, it was not part of her official duties. ¶¶ 126-8, 132. Nothing about teaching girls Physical Education required her to confess (in the words of *Barnette*), in front of other students, that she approved a given student's gender identity claims. *See* ¶¶58, *et seq*; ¶ 121, *et seq.*

Having shown unconstitutional discrimination, Bachman also states claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, for religious discrimination, and for the retaliation suffered because of complaints about the policy.

The case law in this area is developing rapidly. Defendants refer over twenty times to *Kluge* v. *Brownsburg City. Sch. Corp.*, 432 F.Supp.3d 823 (S.D. Ind. 2020). While *Kluge*'s facts can be easily distinguished, the 7th Circuit vacated and remanded the case at *Kluge* v. *Brownsburg Cmty. Sch. Corp.*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023), in light of the Supreme Court's decision in *Groff* v. *DeJoy*, 600 U.S. 447 (2023), clarifying the standards for religious accommodations.

Further, while Defendants' brief defends the District's name/pronoun policy, it does not address the prong of the policy that prohibited Plaintiff from speaking about the issue to parents. ¶

102. This kind of policy has been enjoined elsewhere as a violation of the teacher's free exercise and speech rights, *Ricard* v. *USD 475 Geary Cnty., KS Sch. Bd.*, No. 5:22-CV-04015-HLT-GEB, 2022 WL 1471372, at 1 (D. Kan. May 9, 2022), a case familiar to Defendants' firm. On this ground alone, Plaintiff pleads *some* claims that survive this 12(b)(6) motion.

## Standard

To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim for relief. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). To determine whether a complaint states a facially plausible claim, the factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the nonmovant's favor. *Ingram* v. *Arkansas Dep't of Correction*, 91 F.4th 924, 927 (8th Cir. 2024).

Even so, with respect to Title VII claims, "[a]t the pleading stage in the discrimination context, it is unnecessary to plead enough facts to establish a prima facie case." *Id.*; *Blomker* v. *Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). The prima facie elements "may be used as a prism to shed light upon the plausibility of the claim," however. *Ingram*, 94 F.4th at 927.

## Argument

## I. Plaintiff's Constitutional Claims Should Not be Dismissed

### A. Plaintiff states a claim for violations of the Free Exercise Clause. (Responding to Defs.' Br. Pt. III(B))

The most natural way to assess Mrs. Bachman's claims is through the framework laid down recently in *Kennedy* v. *Bremerton Sch. Dist.*, 597 U. S. 507 (2022). Like the plaintiff in *Kennedy*, Bachman is a teacher who alleges a public-school district has violated her rights of Free Exercise and Free Speech. The *Kennedy* Court addressed Free Exercise first, and so does this brief.

The First Amendment doubly protects religious speech. *Id.* at 523. The Free Exercise Clause protects religious exercise, whether communicative or not, and the Free Speech Clause

provides overlapping protection for expressive religious activities. *Id.* at 507, *citing Widmar* v. *Vincent*, 454 U.S. 263, 269, n. 6 (1981).

A plaintiff may show a Free Exercise Clause violation in multiple ways, but one is by showing that government has burdened the plaintiff's sincere religious practice pursuant to a policy that is not "neutral" or "generally applicable." If the policy fails either the neutrality or general applicability test, it triggers strict scrutiny, under which the government must demonstrate its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest. *Id.* at 525, *citing Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U.S. 520 (1993).

Defendants' brief does not challenge that their policy burdened Plaintiff's sincere religious practice. Thus, the question is whether Bachman has plausibly alleged that the policy was not neutral or generally applicable. *See Kennedy*, 597 U.S. at 525.

"A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'" *Kennedy*, 597 U.S. at 526.

Defendants' policy fails the general applicability test in both ways.

First, the policy granted secular speakers the right denied to Mrs. Bachman. The Hickman Mills policy prohibited Bachman from using a certain student's legal name and birth gender. ¶ 61. But the policy did not require the District's own (secular) records to reflect the same student's new "preferred" name(s) and gender(s), ¶ 5; the District's "Infinite Campus" information system recorded the student's legal name and birth gender, and contained no nicknames. At least one other teacher told Mrs. Bachman that she was unaware of any request for change, and so they, too, were using the legal name and gender. ¶ 68. The District has no legitimate interest in distinguishing between the religious and secular uses.

Second, the policy was almost entirely a process of "individualized exemptions" by the student. ¶¶ 159, 163. The District did not establish a "District position" on the student's name and gender. A student was allowed to communicate to each teacher the name and gender to be

4

used by that teacher in a particular class. ¶ 3. And the District's position was that each teacher was then compelled to speak *whatever words the student preferred. Id*. Mrs. Bachman polled a few other teachers. Some did not know about a change; they were using the name from the Infinite Campus database. ¶ 97-8. Another reported that she had been given a different name than the one given to Bachman, and the name was arguably a more gender-neutral. *Id*. In other words, the same student had established three identities for three teachers at the same time.

The District's brief suggests Plaintiff's pleading must be "resort[ing] to wordplay," Br. at 10, but this is not the case. The District admits that its policy was to "refer to students by their [] preferred names and pronouns when communicating with them." Br. at 11. More bluntly, the policy is "say what the student wants you to say."

The District also suggests that "[t]he issue is not whether teachers were allowed to call a student by the student's legal name or other name. The issue is whether other teachers were permitted by Defendants to refer to students by their non-preferred names and pronouns when communicating with them." But that is precisely the issue. If a student tells one teacher their new, preferred identity is as a boy named "Robert," it does matter if other teachers were allowed to address the student like a girl named "Jane," and if yet others were asked to call the student by a gender-neutral name like "Jaz." It matters even more that only the teacher with a religious objection to calling the student "Robert" is fired.

The District cites *Kluge* v. *Brownsburg Cmty. Sch. Corp.*, 432 F.Supp.3d 823 (S.D. Ind. 2020), a case now vacated and remanded at No. 21-2475, 2023 WL 4842324, at 1 (7th Cir. July 28, 2023), in light of the Supreme Court's clarification of the standard for Title VII claims in *Groff* v. *DeJoy*, 600 U.S. 447 (2023). But the *Kluge* policy was very different from Hickman Mills' policy:

> During the summer of 2017, BCSC began to allow transgender students ... to change their names and genders in the BCSC database known as PowerSchool. Name changes in the PowerSchool database required a letter from the student's parent(s) and a letter from a healthcare professional. BCSC employees, including Mr. Kluge, were instructed to refer to students using the names and genders listed in the PowerSchool database.

*Kluge*, 432 F.Supp.3d at 833 (citations omitted).

In *Kluge,* the school (BCSC) established one name and gender for all classes and its database (called PowerSchool). The BSCS decided a name change deliberately, after input from the student, their parents, and medical professionals agreed on one new name and gender. That one name was used in all communication, written and oral, physical and digital, by BCSC. *Id.*

Here, Hickman Mills' database (called Infinite Campus) did not reflect a new name, gender, or even a new nickname. ¶ 87. Hickman Mills did not obtain a letter from parents or medical professionals. ¶ 101. There was no deliberation by Hickman Mills about the government's message. A Hickman Mills student had the discretion to pick multiple names and identities, and the District required each teacher to speak at the Student's message. ¶ 204.

If one teacher can satisfactorily teach English to a girl named Jane in first hour, and the school's official records call the student Jane, there is no pedagogical or governmental reason to fire the Girls' Physical Education teacher for calling the student Jane in the second hour. Yet that was the practical result of Hickman Mills' policy here.

### B.   Plaintiff states a claim for violations of the Free Speech Clause. (Responding to Defs.' Br. Pt. III(A))

Having stated Free Exercise claims, Plaintiff also states, unsurprisingly,  Free Speech claims. The Free Speech Clause often overlaps the Free Exercise Clause in its protection of religious expression. *Kennedy,* 597 U.S. at 523.

The Free Speech Clause protects teachers, even when they speak at school; teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 527, *quoting Tinker* v. *Des Moines Indep. Cmty. School Dist.*, 393 U.S. 503, 506 (1969); *see also Lane* v. *Franks*, 573 U.S. 228, 231 (2014) (educator could not be fired over testimony "outside the course of his ordinary job responsibilities").

The Free Speech clause protects expressive conduct and silence; government cannot compel private speech. *Janus* v. *American Fed'n of State, County, and Mun. Employees, Council 31*, 585 U.S. 878 (2018). Bachman alleges that she was punished for using speech the District opposed, and that she was penalized by the District for failing to say something she opposed. ¶ 4.

To establish a compelled speech claim, a [plaintiff] must demonstrate there was (1) speech (2) to which they objected (3) that was compelled by some governmental action. *See Norgren* v. *Minnesota Dep't of Hum. Servs.*, 96 F.4th 1048, 1057 (8th Cir. 2024), *citing Janus,* 585 U.S. 878. The third element generally requires proof that the government exacted a penalty based on the speech, or otherwise coerced their acceptance of a particular message. *Norgren*, *supra*; *see 303 Creative LLC* v. *Elenis*, 600 U.S. 570, 589 (2023) (public accommodation law penalties could not be used to compel designer to affirm same sex marriages).

Defendants' brief claims the pronoun policy was merely the Government's message, and that her speech about the student's gender was required of Bachman as a government employee. In most Free Speech claims by a government employee, courts apply the "*Pickering–Garcetti*" framework. *See Kennedy,* 597 U.S. at 509. In that framework, there is a threshold issue about whether the speech involved is actually the government's speech. The First Amendment does not prohibit managerial discipline based on [a public] employee's expressions made pursuant to [his] official responsibilities. *McGee* v. *Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo.*, 471 F.3d 918, 919 (8th Cir. 2006), *applying Garcetti* v. *Ceballos,* 547 U.S. 410 (2006).

But *Janus* questions whether this "*Pickering* framework" even applies in compelled speech cases:

> Of course, if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message. Otherwise, however, it is not easy to imagine a situation in which a public employer has a legitimate need to demand that its employees recite words with which they disagree. **And we have never applied *Pickering* in such a case**.

*Janus*, 585 U.S. at 98 (emph. added). *See also Keyishian* v. *Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 602 (1967) (regulation of "subversive" speech by teachers not permissible); *Wieman* v. *Updegraff*, 344 U.S. 183 (1952) (teachers cannot be compelled to take state-mandated loyalty oath).

*Garcetti* itself expressly declined to apply its rule to "a case involving speech related to scholarship or teaching." 547 U.S. at 425. The 6th Circuit has specifically struck down a University

policy similar to the policy here, saying *Garcetti* simply did not apply. *See Meriwether* v. *Hartop*, 992 F.3d 492 (6th Cir. 2021).

*Janus* ultimately decided that *Garcetti* was "inapposite" where, as here, the government attempts to compel the teacher to support third-party speech. *Janus*, 585 U.S. at 98. Speech "pursuant to [an employee's] official duties" happens when "the employee's words are really the words of the employer." *Janus*, 585 U.S. at 910. *Pickering* applies when "[t]he employee is effectively the employer's spokesperson ... [but] if the union's speech is really the employer's speech, then the employer could dictate what the union says. Unions, we trust, would be appalled by such a suggestion." *Id*.

### 1.    HICKMAN MILLS IS COMPELLING SUPPORT OF A THIRD-PARTY'S MESSAGE; IT IS NOT ESTABLISHING GOVERNMENT SPEECH.

Plaintiff pleads a situation like the one struck down in *Janus*. Government sought to "compel her to break her silence, or to speak words contrary to her faith …. the message of a student, not Mrs. Bachman's own message." ¶ 143.

The government cannot claim it has created an "official duty" to speak a third party's message, even if it helps the government in some way, like achieving "labor peace" and reducing conflict involving rival unions. *Janus,* 585 U.S. at 895. If the government decided "effective operation" of an office would be helped by compelling staff to write memos that praise their supervisors, *Janus* suggests strongly that the demand would violate the First Amendment. *Id*. at 908. "Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Keyishian* v. *Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 602 (1967) (regulation of "subversive" speech by teachers not permissible); *see also Wieman* v. *Updegraff*, 344 U.S. 183 (1952) (teachers cannot be compelled to take state-mandated loyalty oath).

In order to decide whether the speech is the government's speech or the third-party's speech, *Janus* asks whether the government actually controls the speech: "if the union's speech is

really the [government employer]'s speech, then the employer could dictate what the union says." *Id*. Hickman Mills does not claim it could stifle the *student's* speech about their identity at school. If the name and pronoun were really Hickman Mills' own speech, the government might be able to argue against the student, or require the student to use the government's name in classroom communications with the teacher. But that is not how the policy works at Hickman Mills; the party setting the message is the student. The government is agnostic as to the gendered words, so long as the student prefers it. As Bachman pleads: "[t]his was the core 'policy' that led to Bachman's termination: Bachman had been commanded by Jordan to communicate a certain message, and that message was to be a student's message about transgender ideology." Compl. at ¶ 91; *see also* ¶¶ 58-9, 204-5.

Because Bachman plausibly pleads she is required to speak a third-party's message, *Janus* says *Garcetti*'s test on "ordinary job responsibilities" is "inapposite." *Janus*, 585 U.S. at 910.

## 2.   PLAINTIFF'S SPEECH WAS NOT PART OF THE "OFFICIAL DUTY" OF TEACHERS IN THE DISTRICT.

Even if, despite *Janus* and *Garcetti*'s own admonitions, this court did reach whether this speech was part of Plaintiff's official duties, it should find Plaintiff's speech is private speech on a public concern.

Plaintiff repeatedly pleads that she could perform all of her job duties without speaking the student's "chosen name/pronoun." "…Bachman could fulfill her teaching duties … using gender-neutral language." ¶ 79. She has also pleaded that she "had no valid official duty to participate in students' social transition." ¶ 126. She pleads that the policy was not a valid curricular requirement. ¶ 127, 71.

Even when a government employee speaks at a place and time ordered by the employer, it does not make all the employee's speech part of their ordinary job responsibilities. So, for example, in *Lindsey* v. *City of Orrick*, 491 F.3d 892 (8th Cir. 2007), a government employee was tasked to go to a City Council meeting and report about their job duties. As part of their job, they had attended a seminar that referenced Missouri's sunshine law. At the required meeting, the employee voiced

concern that the Council had violated the sunshine law. The 8th Circuit said the speech about the sunshine law was private citizen speech. *Id.*

Mrs. Bachman's job duties were to teach certain concepts about Health and Physical education. The presence of a student with strong beliefs about their gender identity does not change the curriculum, or the duties of the teacher, any more than the presence of a student with a strong religious identity, or political identity, or philosophical identity changes the job duties of a teacher. The student's speech about their own gender identity is not government speech; that private speech did not trigger a new official job duty for a teacher to affirm the student's private view.

Matters like gender identity are of public concern. *Janus* specifically holds that "gender identity" is "undoubtedly [a] matter[] of profound value and concern to the public." *Janus*, 585 U.S. at 913-4; *see also Lindsey,* 491 F.3d at 898. Thus, even under an inapposite *Garcetti* test, *Janus*, 585 U.S. at 910, Plaintiff was engaged in private speech about a matter of public concern.

## II.   Plaintiff's Title VII claims should not be dismissed

Having pleaded constitutional violations, Plaintiff also meets the more relaxed pleading standard under Title VII. For Title VII, "[a]t the pleading stage in the discrimination context, it is unnecessary to plead enough facts to establish a prima facie case." *Ingram* v. *Arkansas Dep't of Correction*, 91 F.4th 924, 927 (8th Cir. 2024); *Blomker* v. *Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). The prima facie elements "may be used as a prism to shed light upon the plausibility of the claim," however. *Id.*

Plaintiff plausibly pleads claims for religious discrimination, failure to accommodate, and retaliation under Title VII.

### A.   Plaintiff states a claim for Title VII religious Discrimination. (Responding to Defs. Br. Pt. III(C))

Defendants wanly claim that Plaintiff failed to state a *prima facie* claim for Title VII discrimination, before turning to Plaintiff's claim for reasonable accommodation.

But "[a]t the pleading stage in the discrimination context, it is unnecessary to plead enough facts to establish a prima facie case." *Ingram*, 91 F.4th at 927; *see also Blomker* v. *Jewell*, 831 F.3d at 1056. The prima facie elements merely inform the plausibility of the claim. *Ingram*, 91 F.4th at 927.

*Beasley* v. *Warren Unilube, Inc.*, 933 F.3d 932, 937 (8th Cir. 2019) lays out the standard for employment discrimination in the context of a discharge:

> To make a *prima facie* case for employment discrimination in the context of a discharge, [a plaintiff] must establish: (1) he "is a member of a protected group"; (2) he "was qualified for h[is] position"; (3) he "was discharged"; and (4) "the discharge occurred under circumstances permitting an inference of discrimination." *Elam* v. *Regions Fin. Corp.*, 601 F.3d 873, 879 (8th Cir. 2010). This burden is "not onerous." *Rodgers* v. *U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005) (cautioning against "conflat[ing] the prima facie case with the ultimate issue of discrimination"), *abrogated on other grounds by Torgerson* v. *City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). Nor are these requirements "intended to be rigid, mechanized, or ritualistic." *Id.* They merely serve the gatekeeping function of "eliminat[ing] the most common nondiscriminatory reasons for [adverse employment actions]." *Texas Dept. of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 254 (1981).

Defendants do not challenge items 1 or 3. Defendants suggest that Plaintiff failed to show she was qualified for the position, as stated in *Beasley* (or "met her employer's legitimate expectations" in *Gibson* v. *Am. Greetings Corp.,* 670 F.3d 844, 853 (8th. Cir. 2012), only as far as Plaintiff did not obey the challenged name/pronoun policy.

As for the "qualification" prong, Defendants cannot assert that the policy was a "legitimate qualification," when the complaint asserts the policy is *not* a legitimate qualification. Plaintiff pleads that "Defendants' policy ... [was] not a valid curricular requirement," ¶ 127, and that her refusal did not interfere with efficient function of the school. ¶ 71. Even if the Defendants believe the policy is defensible, at this point any disagreement must be resolved in favor of Plaintiff. "While the qualifications for [] positions may be open to interpretation, any doubts about their meaning must be construed in [Plaintiff's] favor at this stage of the litigation. *Norgren* v. *Minnesota Dep't of Hum. Servs.*, 96 F.4th 1048, 1055 (8th Cir. 2024).

Nothing in the record shows any concerns with Plaintiff's other qualifications or performance. Public school teachers are required by law to meet minimum requirements. *See* RSMo. §168.021; as a matter of public record, the Missouri Department of Secondary Education

shows that Geri L. Bachman was "appropriately certificated" for the Physical Education courses she taught in 2021-2022 for the Hickman Mills School District.[3] The "qualification" or "legitimate expectation" prong is intended to examine whether there are other legitimate, alternative explanations for a termination. *See Ingram* v. *Arkansas Dep't of Correction*, 91 F.4th 924, 928 (8th Cir. 2024) (complaint supports conclusion prison employee failed to meet legitimate expectations when she allowed money to be stolen by prisoner). Here, there is no "other" reason given for termination; all of the correspondence and briefing admits Plaintiff was terminated for not following the policy of speaking the student's "chosen name/pronoun." Br. at 14.

As for "facts giving rise to an inference of discrimination, Plaintiff has amply pleaded that secular speakers and other teachers were not required to follow the policy (or were not punished). ¶ 5. Plaintiff has also clearly pleaded that the policy was not applied neutrally, both in the First Amendment and Title VII contexts. (*See*, Pt. I, *supra*, discussing how policy is not generally applied.) Secular speakers were allowed to address the student using the words Plaintiff was forbidden from using. ¶ 5. And she has noted that the student made individualized allowances for teachers—and "in another class, taught by a member of the LGBT community, Student A went by a third name." ¶ 98. The member of the LGBT community has different religious and philosophical beliefs than Plaintiff. "This suggests the students were assessing and targeting teachers, to figure out which teachers would comply with their requests." ¶ 100. "Once the Students found that Bachman would not speak their message because of her faith, they complained to administrators. The Administrators should have denied the students' discriminatory, targeted demands." ¶ 106-7.

These facts, presumed to be true, give rise to an inference of religious discrimination. Plaintiff has more than *plausibly* alleged discrimination sufficient to survive a motion to dismiss.

---

[3] *See* https://apps.dese.mo.gov/HQT/CredentialListerChecker.aspx

## B.  PLAINTIFF PLEADS RELIGIOUS DISCRIMINATION BY FAILURE TO ACCOMMODATE. (RESPONDING TO DEFS. BR. PT. III(C)(3), (4))

Title VII forbids an employer to "discharge any individual, or otherwise to discriminate against any individual ... because of such individual's ... religion[.]" 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

Defendants' brief appears to accept that Plaintiff has successfully pleaded a claim for accommodation. It only raises a defense of "undue hardship." Br. at 14.

Undue hardship is an affirmative defense, and a plaintiff generally does not have to plead the non-existence of such a defense. *See Adeyeye* v. *Heartland Sweeteners, LLC*, 721 F.3d 444, 448–49 (7th Cir. 2013), as applied in *Lee* v. *Seasons Hospice*, No. 22-CV-1593 (PJS/DJF), 2023 WL 6387794 (D. Minn. Sept. 29, 2023).  In order to win a motion to dismiss, the undue hardship must be "apparent on the face of the complaint," including the materials properly before the Court on a motion to dismiss. *Lee,*  2023 WL 6387794, at *3.

Defendants first claim that "allowing Plaintiff the requested accommodation would be an undue hardship for the school district as her requested accommodation would be in violation of Title IX," but then in footnote 3 suggests "the Court need only recognize that allowing Plaintiff to discriminate against students would subject the District to lawsuits *and penalties.*" Br. at 17 (emphasis added).

The footnoted speculation about future lawsuits and penalties is inadequate. To establish "undue hardship," an employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff* v. *DeJoy*, 600 U.S. 447, 470 (2023), and whether a given accommodation would cause "undue hardship" is a fact-intensive inquiry. The mere risk that third parties would sue because they are hostile to a proper accommodation is now "off the table" in this analysis, because "if bias or

hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself." *Id.* at 472. *See also Harrell* v. *Donahue*, 638 F.3d 975, 979 (8th Cir. 2011) ("[d]eterminations of what constitutes an 'undue hardship' must be made on a case-by-case basis."). Moreover, it would be inappropriate to dismiss based on the mere assertion of a future harm. *See Lee*, 2023 WL 6387794, at *4 (increased risks or reputational damage insufficient obtain dismissal without factual record).

As footnote 3 portends, Defendants cannot show that all of Plaintiff's suggested accommodations violate Title IX. *Seaworthy* v. *Pearson*, 203 F.3d 1056(8th Cir. 2000) says an employer cannot be required to offer an accommodation that will violate the law. But Defendants have not shown all of Plaintiff's proffered accommodations would violate the law, or even considered whether other accommodations are available.

One of the potential accommodations requested by Plaintiff was the transfer of a male-identifying student to a health class consistent with their identity. Compl. at ¶¶ 96, 161. The Department of Education's regulations specifically allow sex-separated physical education classes. 34 CFR 106.34(c), (e). It would have imposed no hardship on Hickman to *follow Title IX* by consistently putting girls and boys in the single-sex classes Hickman Mills already offers.

Moreover, Plaintiff's other accommodation requests do not necessarily violate the law. The Department has recently announced the pending issuance of new Title IX rules, and has committed that "nothing in these regulations requires a recipient to restrict rights protected under the First Amendment or any other rights guaranteed against government action under the U.S. Constitution. The Department likewise interprets and applies its regulations consistent with RFRA...."[4]

---

[4] Unofficial Final Rule available at https://www2.ed.gov/about/offices/list/ocr/docs/t9-unofficial-final-rule-2024.pdf (last accessed April 29, 2024).

In the final rule comments, the Department specifically denies that "misgendering" always violates Title IX:

> As discussed throughout this preamble, **whether verbal conduct constitutes sex-based harassment is necessarily fact-specific**. While the final regulations do not purport to identify all of the circumstances that could constitute sex-based harassment under Title IX, **a stray remark, such as a misuse of language, would not constitute harassment under this standard**. See above discussion of Hostile Environment Sex-Based Harassment—Severe or Pervasive (§ 106.2). Similarly, **the Department takes First Amendment concerns seriously, and nothing in the regulations requires or authorizes a recipient to violate anyone's First Amendment rights**. *See* 34 CFR 106.6(d); *see, e.g., W. Va. State Bd. of Educ.* v. *Barnette*, 319 U.S. 624, 642 (1943); *Hartop*, 992 F.3d at 511 (holding that in the absence of evidence that a professor's conduct "inhibited Doe's education or ability to succeed in the classroom," the conduct was not sufficiently severe and pervasive to implicate Title IX).

*Id*. at 151-2 (emphasis added).

Because Defendants cannot show an undue hardship on the face of the complaint or the material available to the Court, it would be inappropriate to dismiss Plaintiff's Title VII claim for discrimination.

### C.   PLAINTIFF PLEADS TITLE VII RETALIATION. (RESPONDING TO DEFS. BR. PT III(D))

"To establish a prima facie case of retaliation, an employee must show that he engaged in protected activity; he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and there is a causal connection between the protected activity and the adverse action." *Gibson* v. *Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012). Given that this "prima facie model is an evidentiary, not a pleading standard," *Blomker* v. *Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016), the complaint's allegations must only "give plausible support" to these elements. *Norgren* v. *Minnesota Dep't of Hum. Servs.*, 96 F.4th 1048, 1055 (8th Cir. 2024).

Unlike race discrimination claims, retaliation claims do not require a plaintiff to show she "was meeting the legitimate expectations of the employer." *Johnson* v. *Humphreys*, 949 F.3d 413, 416 (8th Cir. 2020).

"When an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford* v. *Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009).

Defendants suggest Plaintiff "simply request[ed] an accommodation," which "does not equate to opposing a practice made unlawful by Title VII." Br. at 18.

Defendants have oversimplified Mrs. Bachman's activity, detailed at ¶¶ 75 and following in the complaint. Bachman was summoned by Defendant Jordan, and told to follow the policy. Bachman opposed the policy at that meeting, and thought she had obtained an accommodation. ¶ 79. In February 2022, Bachman received a new reprimand letter. Bachman wrote a rebuttal to this reprimand letter, ¶ 96, and opposed the basis for Jordan's reprimand—she said she had received no written documentation. She observed the school's computer systems showed the students as female, which opposed the validity of the reprimand, *id*.; this suggests discrimination and unfairness, because the school was imposing on her faith, while using the 'wrong' gender itself in a secular database. She also suggested another accommodation, that students claiming male identity should be moved to the class for boys. *Id.*

In other words, Plaintiff challenged the legitimacy and sufficiency of the policy and her reprimand, signaling to the Administration that she would not quietly roll over. The District did not respond by bolstering the facts to support their reprimand; the District escalated directly to termination. Only after Plaintiff's rebuttal challenged the sufficiency of the reprimand did Defendants elevate this from a *censure* into a *termination.* This shows opposition by Bachman, and retaliation by the District.

## III. Defendants Jordan and Obeng are not entitled to Qualified Immunity. (Responding to Defs. Br. Pt. III(G))

"In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held unlawful. In the absence of binding precedent, a court should look to all available decisional law including decisions of state courts, other circuits and district courts...." *Burnham* v. *Ianni*, 119 F.3d 668, 677 (8th Cir. 1997).

Plaintiff has a clearly established right to be free of compelled third-party speech as a teacher. Jordan and Obeng, the administrators, violated this clearly established right. "Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Keyishian* v. *Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 602 (1967) (teachers could not be compelled to affirm anti-subversive pledge). In *Burnham*, 119 F.3d at 677, the 8th Circuit has held:

> As a basic matter, the Supreme Court stated in 1969 '[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.' *Tinker*, 393 U.S. at 506. Indeed, a year earlier, the idea that a faculty member could be compelled to relinquish First Amendment rights in connection with employment at a public school was "unequivocally rejected" by the Supreme Court. *Pickering* v. *Board of Educ.*, 391 U.S. 563, 568 (1968).

Further, *Janus* unequivocally prohibits imposing a third-party's discretionary speech on teachers, especially using a policy that took no efforts to be generally applicable or tailored.

Jordan and Obeng might claim to face a 'new' question involving gender identity, but very old law prohibited them from taking the course of compelled speech. This policy was "plainly incompetent," *Harlow* v. *Fitzgerald*, 457 U.S. 800, 814 (1982), or else the product of officials who knowingly or recklessly violated Plaintiff's rights. Jordan and Obeng are not entitled to qualified immunity.

## IV.   PLAINTIFF'S STATE LAW STATUTORY CLAIMS SHOULD NOT BE DISMISSED. (RESPONDING TO DEFS. BR. PT. III(E))

Finally, Defendants allege that Plaintiff's claims under the Student Religious Liberties Act, RSMo. §160.2500 (Count VII) and the Missouri Religious Freedom Restoration Act, RSMo. §1.302 (VIII) fail; Defendants cite the Missouri Human Rights Act's statement that it "shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." RSMo. §213.070.

The MHRA's exclusivity is for "damages arising out of an employment relationship." *Brandon* v. *Bd. of Educ. of City of St. Louis*, No. 4:22-CV-00635-SRC, 2023 WL 4104293, at *18 (E.D. Mo. June 21, 2023) concerns a case where the damages were already recoverable under the MHRA. Here, Plaintiff's damages did not entirely arise out of employment, and that subset of damages is permitted under Title VII.  But Plaintiff may seek additional damages caused by violation of claims arising out of constitutional and statutory rights.  *See, e.g.*, *State ex rel. Church & Dwight Co.* v. *Collins*, 543 S.W.3d 22, 27 (Mo. 2018)(MHRA exclusivity analysis depends on remedies).

Defendants try to analogize the relationship between the MHRA and MRFRA to the relationship between the two federal statutes, Title VII and RFRA.  This is because the 8th Circuit has held Title VII preempts any RFRA claim by a federal employee.   Yet Title VII is not "exclusive" of all other federal statutes; Title VII's exclusivity ends "when the employer's conduct also amounts to a violation of a right secured by the Constitution." *Henley* v. *Brown*, 686 F.3d 634, 642 (8th Cir. 2012), so a Sec. 1983 claim for violating a Constitutional duty is not preempted. *Id*.  And so, to apply Defendants' analogy, the question is whether MRFA and SRLA are another way to recover employment damages, or whether they allow Plaintiff to recover for (Missouri) constitutional rights.

The SRLA specifically applies Constitutional free speech ideas to public school districts. And the MRFRA, likewise, explicitly protects the Constitutional right of free exercise.  The MRFRA, like the federal RFRA, is intended to operate as a "super statute," displacing the normal

operation of other laws. *See Bostock* v. *Clayton County, Georgia*, 590 U.S. 644, 682 (2020). Thus, the MHRA should not be read to be the exclusive remedy for free speech claims or free exercise claims, as implemented by these statutes.

Plaintiff adds that the *Brandon* court summarily concluded the MHRA is "more particular" than MRFRA. But by its terms, MHRA is not more particular. It applies to employment relationships involving "the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state, and any person directly acting in the interest of an employer" while MRFA applies to a more limited group of actors: those in "governmental authority." And everyday employment is a broader area of regulation than RFRA's concern with government's restriction of free exercise of religion in a way that does not meet a compelling state interest.

For these reasons, the state statutory claims survive.

## V.   Claims against individuals

Because the Defendants have represented the claims are "duplicative," and not subject to sovereign immunity, Plaintiff contemporaneously dismisses its claims against the individual board members, and the Title VII claims against supervisors Jordan and Obeng, without prejudice. Plaintiff retains her personal capacity claims against Jordan and Obeng, and all of her claims against the District.

## Conclusion

For all these reasons, Defendants' Motion to Dismiss should be denied.

RESPECTFULLY SUBMITTED,

LAW OFFICES OF
JONATHAN R WHITEHEAD LLC
s/Jonathan R. Whitehead_____
Jonathan R. Whitehead (#56848)
229 S.E. Douglas St., Ste. 210
Lee's Summit, Missouri 64063
Phone: 816-398-8305
Fax: 816-278-9131
jon@whiteheadlawllc.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, the foregoing was electronically filed using the Court's CM/ECF system, which sent notification to all counsel of record.

/s/ Jonathan R. Whitehead_____
AN ATTORNEY FOR PLAINTIFF
GERI BACHMAN