# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

GERI BACHMAN, )
           )
          Plaintiff, )
           )
vs. )
           ) No. 23-00931-CV-W-FJG
           )
HICKMAN MILLS C-1 SCHOOL DISTRICT, )
ET AL., )
           )
          Defendants. )

# ORDER

Currently pending before the Court is defendants' Motion to Dismiss (Doc. # 10) and the defendants' Motion for a Protective Order (Doc. # 38).

## I. BACKGROUND

On December 20, 2023, plaintiff filed her Complaint against the Hickman Mills C-1 School District (the "District"), Yaw Obeng, the Superintendent of the District, Derrick Jordan, the Principal of Smith-Hale Middle School and the members of the Board of Education. Plaintiff's Complaint asserted ten counts: 1) Free Speech – Retaliation; 2) Compelled Speech; 3) Free Exercise of Religion; 4) Viewpoint Discrimination; 5) Religious Discrimination in Violation of Title VII; 6) Retaliation in Violation of Title VII; 7) Missouri Student Religious Liberties Act; 8) Missouri Religious Freedom Restoration Act; 9) Violation of Missouri Constitution; 10) Violation of First Amendment of the U.S. Constitution – Free Exercise of Religion (Defendants Jordan and Obeng in their personal capacities). Defendants have moved to dismiss all of plaintiff's claims.

On May 14, 2024, plaintiff dismissed her claims against the individual School Board members in their official capacities as Directors of the Board of Education. She also dismissed Yaw Obeng and Derrick Jordan, Sr. from any and all claims in their official capacities. Plaintiff retained her other claims against Hickman Mills C-1 School District and her other claims against defendants Obeng and Jordan in their personal capacities (Doc. # 23).

Plaintiff Geri Bachman taught Girls' Physical Education at Smith-Hale Middle School during the 2021-2022 school year. (¶ 35). Plaintiff is a Christian who believes that the rejection of one's biological sex is a rejection of the action of God within that person. Plaintiff also believes that she cannot affirm as true those ideas and concepts that she believes are not true. She believes that doing so would violate biblical, divinely ordained commands against dishonesty and lying. (¶¶ 39-40). Plaintiff believes that to assist another in affirming that individual's rejection of their biological sex would make her complicit in the sin of rejecting the image of God in that individual's life. Ms. Bachman believes that referring to a male student as a female or a female student as a male is sinful. (¶¶ 41-43). Ms. Bachman is aware that some students express gender identities that are inconsistent with their sex and request to be addressed by a different name consistent with their new identity and pronouns that are inconsistent with their sex. Plaintiff objects to participating in any student's transition because she believes that participating in this intervention creates an unreasonable risk of harm to the student. (¶¶ 48,52).

Plaintiff alleges that defendant Jordan ordered her to use any name, pronoun or gender identity claimed by a student, even if it was inconsistent with that student's legal

name and sex. (¶ 61). Plaintiff alleges that the school's policy was not neutral toward religion or generally applicable and that other teachers were allowed to use a student's legal name or another name that was not inconsistent with a particular student's sex. Plaintiff alleges she was terminated after requesting a religious accommodation from the policy. (¶ 68). Under the School District's policy, students may select and express any gender identity they choose because the expression is based entirely on an individual student's feelings. (¶ 69).

On October 7, 2021, Ms. Bachman was summoned to a meeting with the principal. Defendant Jordan ordered plaintiff to address students with their chosen names and pronouns. (¶¶ 75-76). Plaintiff explained to Jordan that her religious beliefs prevented her from describing biological females as males or vice versa. (¶ 77). When she left the meeting, she understood that Mr. Jordan had agreed that she could fulfill her teaching duties without violating her religious beliefs by using gender neutral language. (¶ 79). Plaintiff alleges that Jordan's agreement constituted an accommodation of her religious beliefs, and she believed that she was following the policies and instructions of the Principal after the meeting. (¶ 80).

In January 2022, the District received two separate student statements which indicated that plaintiff had refused to address them by the gender they identified with. (¶ 82). According to the District, plaintiff stated in a meeting on January 26, 2022 that she would only refer to the students by the gender and name in the District's computer system. (¶ 84). The computer system identified the students as female, and both students were enrolled in plaintiff's class and had given names consistent with their biological sex. (¶¶ 85-86). On February 9, 2022, Ms. Bachman received a letter of

reprimand from Jordan. The letter stated that Ms. Bachman had failed to follow Jordan's directive regarding "acknowledging students' right of choice and remaining neutral regarding religious matters" and was "a blatant disregard of [the District's] policies . . .." (¶ 90). The reprimand letter said Ms. Bachman had been insubordinate and her conduct had violated Board Policies AC, GBCB, and HMC-1 Standards of Professional Commitment, as well at Title IX. (¶ 93). Ms. Bachman submitted a rebuttal letter stating that she had received no written documentation that the two students wanted to be known as boys and the schools' computer system referred to them as females. (¶ 96). After the reprimand letter, Bachman noted that the two students involved were inconsistent with their demands such that the names and genders demanded of other teachers were different from the demands made of her. (¶ 97).

On March 14, 2022, Ms. Bachman was notified that Mr. Jordan would recommend that the School Board terminate her contract at the end of the school year for violating the Missouri Teacher Standards on "Classroom school and community culture" and "professional rights, responsibilities, and ethical practices," related to the gender of the students. On March 25, 2022, plaintiff was notified in writing that the School Board had voted not to renew her contract. (¶¶ 109-110).  On July 31, 2022, Ms. Bachman's contract ended, and she was terminated. (¶ 112). Ms. Bachman timely filed a complaint with the EEOC which issued her a right to sue letter on September 25, 2023. (¶ 116).

## II. STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting

4

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

### III. DISCUSSION

### 1. FREE SPEECH CLAIMS (Counts 1, 2 and 4)

Defendant alleges that Counts 1, 2 and 4 all attempt to assert claims for infringement on plaintiff's right to free speech in violation of the Constitution. Defendants argue that these claims fail because plaintiff's speech was not protected by the Constitution as it was pursuant to her official duties, and it was not a matter of public concern.

### a. Count 1 - Free Speech Retaliation

To state a § 1983 claim for retaliation in violation of the First Amendment, Plaintiff must satisfy three elements: (1) "[s]he was engaged in activity protected by the First Amendment," (2) the "government official" took an adverse employment action against [her]," and (3) "[her] protected speech was a substantial or motivating factor in the [government official's] decision to take the adverse employment action." Davenport v. Univ. of Ark. Bd. Of Trs., 553 F.3d 1110, 1113 (8th Cir. 2009). "The determination of whether a public employee's speech is constitutionally protected is a question of law."

5

Kluge v. Brownsburg Comm. Sch. Corp., 432 F.Supp.3d 823, 837 (S.D.Ind. 2020).

Plaintiff alleges that she engaged in constitutionally protected speech by invoking her interest as a citizen in remaining silent on a matter of public concern or by addressing students consistent with their sex in an attempt to avoid participating in any student's "social transition."  Plaintiff alleges that the defendants' policies as reflected in the February 9, 2022 letter and as applied to her violated her constitutional rights.  Plaintiff alleges that the defendants took adverse action against her by reprimanding her, giving her an unfavorable evaluation and declining to renew her contract. Plaintiff alleges that the defendant's actions were motivated by the exercise of her constitutional rights.

> To establish a claim for employer retaliation under the First Amendment, [plaintiff] must show that "[s]he engaged in activity protected by the First Amendment." Lyons v. Vaught, 875 F.3d 1168, 1172 (8th Cir. 2017) (Lyons II) (quoting Lyons v. Vaught, 781 F.3d 958, 961 (8th Cir. 2015) ). A public employee's speech is protected under the First Amendment if [s]he spoke as a citizen on a matter of public concern, but a public employee's speech is not protected if [s]he spoke pursuant to [her] official duties. Buehrle v. City of O'Fallon, 695 F.3d 807, 811-12 (8th Cir. 2012); see Garcetti v. Ceballos, 547 U.S. 410, 418, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (stating that when public employees speak on a matter of public concern pursuant to their official duties, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline"). The critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Lyons II, 875 F.3d at 1173 (quoting Lane v. Franks, __U.S__, 134 S.Ct. 2369, 2379, 189 L.Ed.2d 312 (2014)).

Groenewold v. Kelley, 888 F.3d 365, 371 (8th Cir. 2018). "A public employee's speech is pursuant to his employment duties if it is part-and-parcel of the employee's concerns about his ability to properly execute his duties. . .The First Amendment does not protect a public employee's speech if it owes its existence to his professional responsibilities." Id. (internal citations and quotations omitted).

6

Defendants argue that plaintiff's speech is not protected because it was pursuant to her official duties, it was solely related to her duties as a teacher and how she addressed her students was in the scope of her employment. Defendants also argue that plaintiff's free speech claims should be dismissed because her speech was not a matter of public concern. Defendants argue that plaintiff's stating or refusing to state students' names or pronouns does not add to the public discourse on gender identity issues and thus is not the type of speech that is valuable to the public debate regarding these issues.

In opposition plaintiff states that she could perform all of her job duties without speaking the student's chosen name/pronoun. Plaintiff argues that her job duties were to teach certain concepts about Health/Physical Education and the presence of a student with beliefs about their gender identity does not change the curriculum or the duties of the teacher. Plaintiff states that a student's speech about their own gender identity is not government speech; that private speech did not trigger a new official job duty for a teacher to affirm the student's private view." (Plaintiff's Suggestions in Opposition, p 10). Plaintiff alleges that she was engaged in private speech about a matter of public concern.

In Kluge, 432 F. Supp.3d 823,the Court addressed a case very similar to the present case. In that case a music and orchestra teacher brought an action under Title VII, the First Amendment, the Fourteenth Amendment and the state constitution for discrimination, failure to accommodate and retaliation. The teacher alleged that he was forced to resign because his beliefs prevented him from following the school's policy

7

that required him to address transgender students by their preferred names and

pronouns. In analyzing the teacher's Free Speech claims, the Court stated:

> [t]he Supreme Court has distilled a two-part inquiry to analyze the constitutional protection accorded to public employee speech. Garcetti, 547 U.S. at 418, 126 S.Ct. 1951. The first step is to determine whether the employee spoke as a citizen on a matter of public concern. Id. (citation omitted). If the answer is "no," the employee has no First Amendment cause of action based on the employer's reaction to the speech. Id. (citation omitted). If the answer is "yes," then the possibility of a First Amendment claim arises, and the second step is to determine whether the government entity had an adequate justification for treating the employee differently from any other member of the general public. Id. (citation omitted).
>   When considering whether an employee spoke as a private citizen, the fact that the employee spoke inside his workplace, rather than publicly, is not dispositive. Id. at 420, 126 S.Ct. 1951. Neither is the fact that the speech "concerned the subject matter of [his] employment." Id. at 421, 126 S.Ct. 1951. However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. Determining the official duties of an employee requires "a practical inquiry into what duties the employee is expected to perform." Houskins v. Sheahan, 549 F.3d 480, 490 (7th Cir. 2008) (citation omitted).

Id. at 838. The Court in Kluge found:

> While addressing students by name may not be part of the music or orchestra curriculum, it is difficult to imagine how a teacher could perform his teaching duties on any subject without a method by which to address individual students. Indeed, addressing students is necessary to communicate with them and teach them the material—as the Seventh Circuit has stated, how teachers relate to students *is* part of their jobs, and running a classroom is a "core academic dut[y]." Wozniak, 932 F.3d at 1010. Thus, the speech at issue was part of Mr. Kluge's official duties, and this alone is sufficient to preclude any free speech claim under the First Amendment.

Id. at 839. The Court also found that plaintiff's choice of how to address a student did

not involve a matter of public concern. The Court stated:

> Mr. Kluge was not conveying a message concerning such matters when he refused to call students by their names as listed in PowerSchool or referred to students by last name only, because the act of referring to a particular

student by a particular name does not contribute to the broader public debate on transgender issues. Instead, choosing the name to call a student constituted a private interaction with that individual student and a private statement about Mr. Kluge's subjective perception of that student. In addition, according to Mr. Kluge's own allegations, the only point of his speech was to address students. He did not tell students that he had opinions about using transgender students' preferred names or explain why he was using last names only. . . .Thus, Mr. Kluge's speech—merely stating (or refusing to state) names and pronouns without explaining that his opposition to "affirming" transgender students was the reason for doing so— adds little to the public discourse on gender identity issues, and therefore is not the kind of speech that is valuable to the public debate.

Id. at 839. The Court in Kluge found that because the speech was pursuant to Mr. Kluge's official duties as a public employee and did not involve a matter of public concern, he could not maintain a cause of action for his employer's regulation of or reaction to his speech. The Court therefore granted defendant's Motion to Dismiss plaintiff's claims for retaliation, content and viewpoint discrimination and compelled speech under the First Amendment.

Willey v. Sweetwater County School Dist., No. 23CV-0069-SWS, 2023 WL 9597101 (D.Wyo. Dec. 18, 2023), is another case which considered a similar claim. The Court in that case determined that "referring to students by their preferred names and pronouns in the classroom and in written, electronic, and verbal communications relating to the classroom, are part of a teacher's official duties. . . .the District may require its teachers to deliver a lawful message, including referring to students by preferred names and pronouns. Failure to abide by this policy is not speech protected by the First Amendment." Id. at *9. The Court found that plaintiff failed to state a claim on which relief could be granted.

The Court agrees with the analysis of the Kluge and Willey cases and finds that plaintiff's speech was part of her official duties as a teacher and was not a matter of

public concern and was not protected by the First Amendment. Accordingly, the Court finds that plaintiff cannot maintain a cause of action for Retaliation, Viewpoint Discrimination or Compelled Speech under the First Amendment.

Accordingly, the Court **GRANTS** defendant's Motion to Dismiss Counts 1, 2 and 4.

### B. FREE EXERCISE CLAIMS (Counts 3, 9 and 10)

Defendants argue that plaintiff's free exercise of religion claims fail because the district's policy was 1) neutral and generally applicable as it applied to all faculty, not just faculty members of a certain religion and it was 2) rationally related to the District's attempt to follow enacted laws regarding gay and transgender rights in school settings. Government action which is based on neutral, generally applicable rules are subject to rational basis review, even if the application of the rule "has the incidental effect of burdening a particular religious practice." Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 535, 113 S.Ct. 2217, 2228, 124 L.Ed.2d 472 (1993). A government policy will not qualify as neutral if it "discriminate[s] on its face," or if a religious exercise is otherwise its 'object.' "The Supreme Court has explained that a law is not generally applicable when: (1) it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way;' or (2) it 'invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.'" Royce v. Pan, No. 3:23-CV-02012-H-BLM, 2025 WL 834769, at *7 (S.D. Cal. Mar. 17, 2025)(quoting Fulton v. City of Philadelphia, Pennsylvania, 593 U.S. 522, 533-34, 141 S.Ct. 1868, 210 L.Ed.2d 137 (2021). Failing either the neutrality or the general applicability test triggers strict scrutiny. Heller v. Doe by Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257

10

(1993). Defendants state that plaintiff alleges in ¶ 68 that "Defendants' policy, at least as applied here is not neutral toward religion or generally applicable; other teachers were allowed to use a student's legal name, or another name that was not inconsistent with a particular student's sex . . ."  Defendants argue that this allegation is conclusory and is devoid of any supporting facts.  Additionally, defendants argue that this paragraph gives the misleading impression that other teachers were allowed to violate the policy. Defendants argue that the issue is not whether teachers were allowed to call a student by the student's legal name or another name, the issue is whether other teachers were allowed by Defendants to refer to students by their nonpreferred name or pronouns when communicating with them. Defendants note that plaintiff does not allege other teachers were allowed to violate the policy.

In opposition, plaintiff argues that defendants' policy is not neutral or generally applicable for two reasons. First, the policy granted secular speakers a right denied to plaintiff. Plaintiff alleges that the policy prohibited her from using a certain student's legal name and birth gender, but the policy did not require the District's own records to reflect the same student's new "preferred" name and gender. Secondly, plaintiff argues that the policy was almost entirely a process of "individualized exemptions" by the student, because a student was allowed to communicate to each teacher the name and gender they wished to be called in different classes.

In reply, defendants argue that plaintiff misconstrues the issue. "The issue is not whether the students' wishes were the same in regard to all teachers; instead, the only relevant issue is whether the School District's directive applied to all teachers." (Defendants' Suggestions in Opposition, p. 8). Defendants state that plaintiff has not

alleged that the School District permitted any teacher to not comply with the directive to refer to students by their preferred names/pronouns. Defendants point out that there is no allegation that this directive was applied only to Christians or to a particular religious practice, instead the directive was applied to all faculty members. Again, defendants note that the Kluge case is on point with this case on this issue. In Kluge, the Court noted that plaintiff did not allege that any of the school's policies or practices were developed to target any particular religious belief, affiliation or activity. The policy in that case required teachers to refer to students by the names listed in the school's database. The Court found that because the policy was neutral and generally applicable and because plaintiff did not allege facts showing that it targeted or was otherwise motivated by animus toward any particular religion or religious belief, the plaintiff did not state a claim for violation of the Free Exercise Clause.

In the instant case, plaintiff alleges that the policy was not neutral because it treated her religiously motivated refusal to participate in social transition worse than the school's own use of names in school documents and the school's computer system. (Complaint, ¶ 158). Plaintiff alleges that the policies are not generally applicable because some employees were allowed to use other names than those required of Ms. Bachman. (Complaint, ¶ 158). The Court finds that these allegations do not show that the policy was not neutral or generally applicable. As defendant's note, plaintiff does not allege that the policy was specifically targeted at a particular religion or religious practice. Simply because a student requested to be addressed by a name that was different than what was listed in the school's database does not show that the policy was not neutral. Additionally, although plaintiff alleges that some teachers were allowed to address

12

students by different names in different classes, she does not allege that the District permitted teachers of different religious beliefs to violate the policy. Accordingly, the Court finds that plaintiff has failed to state a claim for violation of the Free Exercise Clause and hereby **GRANTS** defendant's Motion to Dismiss plaintiff's Free Exercise of Religion claims under the U.S. Constitution (Counts 3 and 10 ) and her Free Exercise of Religion claim under the Missouri Constitution (Count 9).

## C. RELIGIOUS DISCRIMINATION (Count 5)

In Count 5, plaintiff alleges that defendants discriminated against her on the basis of her religion by 1) taking adverse action against her because of her religious beliefs and 2) failing to provide a reasonable accommodation.  To establish a prima facie claim of religious discrimination plaintiff must show: 1) she is a member of a protected class because of her religious beliefs; 2) she met her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) the circumstances gave rise to an inference of discrimination. Gibson v. Am Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). "Given that this prima facie model is an evidentiary, not a pleading standard, the complaint's allegations must only 'give plausible support' to these elements.' Clobes v. 3M Co., 106 F.4th 803, 807 (8th Cir. 2024) (quoting Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1055 (8th Cir. 2024))." Marin v. TVS Supply Chain Sols. N. Am., Inc., No. 4:24-CV-00901-JAR, 2024 WL 4826792, at *5 (E.D. Mo. Nov. 19, 2024).

Defendants state that the District issued a directive that teachers were to call students by their chosen names/pronouns. Defendants argue that plaintiff admits that she did not follow the directive and instead called students by the names she believed were appropriate, thus she cannot show that she met the District's legitimate expectations.  Additionally, defendants argue that plaintiff has not shown an inference of

discrimination because she has not alleged that teachers with different religious beliefs were allowed to ignore the directive.

In opposition, plaintiff states that with regard to the discrimination claim defendants cannot assert that the policy was a "legitimate qualification" when she pled in her Complaint that the policy was *not* a valid curricular requirement. Plaintiff states that even if defendants believe that the policy is defensible, at this stage of the case, any disagreement must be resolved in plaintiff's favor. Plaintiff also argues that she has alleged that other teachers were not required to follow the policy (or were not punished). Plaintiff states that students made individualized allowances for teachers, suggesting that students were assessing and targeting teachers to find out which teachers would comply with their requests. (Complaint, ¶ 100). "Once the Students found that Bachman would not speak their message because of her faith, they complained to administrators. The Administrators should have denied the students' discriminatory, targeted demands." (Complaint ¶¶ 106-07). Plaintiff argues that these facts give rise to an inference of discrimination.

In reply, defendants state that plaintiff cannot state a claim simply by arguing that the District's policy was not "legitimate." Rather, the issue is whether it is a legitimate expectation of the District that its teachers comply with its directive on how to address students. As to the inference of discrimination element, defendants state that plaintiff did not plead anywhere in her Complaint that teachers with different religious beliefs were permitted by the District to not follow the directive. As to plaintiff's argument that students targeted her by requesting that she use certain names/pronouns because of

her religious beliefs, defendants state that this does not show that the District was somehow vicariously liable for the actions of the students.

The Court finds that plaintiff has failed to plausibly allege a prima face case of religious discrimination. Plaintiff has failed to show that she met her employer's legitimate expectations. Plaintiff admits that she was told by principal Jordan that she had to follow the School District's policy and address students with their chosen names and pronouns. (¶ 76). Plaintiff also admits that in January 2022, the District received two separate student statements indicating that plaintiff refused to address these students by the gender they identified with. (¶ 82). Thus, plaintiff has not shown that she was meeting the District's legitimate expectations. The Court also finds that plaintiff has failed to allege that the circumstances of her termination give rise to an inference of discrimination, as plaintiff never alleged that teachers with different religious beliefs were treated differently or were allowed to disregard the policy regarding student pronouns. For these reasons, the Court **GRANTS** defendant's Motion to Dismiss plaintiff's Religious Discrimination claim in Count 5.

With regard to plaintiff's religious accommodation claim, plaintiff must show that 1) she has a bona fide religious belief that conflicts with an employment requirement; 2) she informed the employer of this belief; and 3) she was disciplined for failing to comply with the conflicting requirement.  Jones v. TEK Indus. Inc., 319 F.3d 355, 359 (8th Cir. 2003).  Once a plaintiff has alleged a prima facie failure to accommodate claim the burden shifts to the defendant to show that accommodating plaintiff's religious beliefs would result in undue hardship.  If the accommodation is an undue hardship, the claim fails. Seaworth v. Pearson, 203 F.3d 1056, 1057(8th Cir. 2000). Defendants argue that

15

the District's policy was instituted to comply with federal and possibly state antidiscrimination laws. Plaintiff's alleged proposed accommodation – to be allowed to refer to students by names and pronouns that do not conform to their gender identity, would be a violation of discrimination laws. Thus, defendants argue the proposed accommodation is unduly burdensome.

Plaintiff states that in order to be successful on a motion to dismiss under a reasonable accommodation claim, the undue hardship on the employer must be apparent on the face of the complaint. Plaintiff states that in order to establish "undue hardship" defendants must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Groff v. DeJoy, 600 U.S. 447, 468, 143 S.Ct. 2279, 216 L.Ed2d 1041 (2023). Additionally, plaintiff states that it would be inappropriate to dismiss based on the mere assertion of a future harm. Finally, plaintiff states that one of the potential accommodations requested by plaintiff would be to transfer the male identifying students to a health class consistent with their identity.

In reply, defendants state that in Kluge, the plaintiff made a similar accommodation request, to be allowed to refer to students by their last names.  However, the Court in Kluge recently granted summary judgment to the school on this issue finding that a Last Names Only Accommodation imposed a substantially increased cost on the school amounting to an undue hardship as a matter of law. Kluge, 732 F. Supp.3d at 968. The Court in Kluge also found plaintiff's proposed accommodation was an undue burden because of its unreasonable risk for substantial and disruptive litigation. Defendants note in their Suggestions in Opposition, plaintiff proposed an alternative accommodation

– transferring male identifying students to a health class consistent with their identity. However, defendants argue that this proposed accommodation is clearly discriminatory because plaintiff is essentially asking to move all transgender students out of her class.

The Court finds that plaintiff has failed to state a claim for a reasonable accommodation because the requested accommodation of either using surnames to refer to students or moving transgender students out of her class would be discriminatory and cause an undue hardship for the school. Accordingly, the Court **GRANTS** defendant's Motion to Dismiss plaintiff's Reasonable Accommodation Claim.

### D. TITLE VII RETALIATION (Count 6)

To establish retaliation under Title VII, plaintiff must prove that 1) she engaged in statutorily protected activity; 2) suffered an adverse employment action; and 3) that the engagement in a protected activity was the but-for-cause of the adverse employment action. Blackwell v. Alliant Techsystems, Inc., 822 F.3d 431, 436 (8th Cir. 2016). Under Title VII, an employee engages in protected activity when she either (1) "oppose[s] any practice made an unlawful employment practice by [Title VII]" or ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under [Title VII]. 42 U.S.C. §2000e-3a. Defendants argue that plaintiff has not engaged in protected activity because she did not plead that that she opposed the allegedly unlawful denial of a religious accommodation. Instead, plaintiff alleged that defendants retaliated against her because of her religious accommodation request. But simply requesting an accommodation does not equate to opposing a practice made unlawful by Title VII. Defendants also argue that plaintiff's Title VII claims against defendants Jordan and Obeng fail as a matter of law because supervisors cannot be held liable under Title VII.

In response, plaintiff states that she was summoned by the principal and told to follow the school's policy. She opposed the policy at that meeting and thought she had obtained an accommodation. (Complaint ¶ 79). In February 2022, Bachman received a new reprimand letter. She wrote a rebuttal and opposed the basis for Principal Jordan's reprimand – she said she had received no written documentation. Plaintiff stated she observed the school's computer database showed the students as female, which she alleges opposed the validity of the reprimand, i.e. suggesting discrimination and unfairness because the school was imposing on her faith, while using the 'wrong' gender in the school's database. Plaintiff states that only after her rebuttal challenged the sufficiency of the reprimand did Defendants elevate the censure to a termination. Plaintiff alleges that this shows opposition on her part and retaliation by the District.

In reply, defendants argue that plaintiff's opposition to a School District's directive is not a protected activity. "[S]imply refusing to comply with the conflicting employment requirement is not 'oppos[ing]' an unlawful 'practice'." Equal Emp. Opportunity Comm'n v. Kroger Ltd. Partnership I, 608 F.Supp.3d 757,790 (E.D.Ark. 2022). Defendants note that plaintiff does not allege that she ever accused the School District of discrimination or accused the School District's directive of being discriminatory. Defendants state that plaintiff's opposition had nothing to do with discrimination, she simply did not agree with and refused to abide by the policy. The Court agrees with defendants and finds that plaintiff has failed to state a prima facie case of Retaliation under Title VII. Accordingly, the Court hereby **GRANTS** defendant's Motion to Dismiss Count 6.

**E. STATE LAW CLAIMS (Counts 7 and 8)**

Defendants state that plaintiff's claims under the Missouri Student Religious Liberties Act (Count 7) and the Missouri Religious Freedom Restoration Act (Count 8) both fail as a matter of law because the Missouri Human Rights Act is the exclusive remedy for claims against her employer. Mo.Rev.Stat. §213.070 and Brandon v. Bd. Of Educ. Of City of St. Louis, 2023 WL 4104293, *19 (E.D.Mo. 2023). The Missouri Human Rights Act states: "This chapter, in addition to chapter 285 and chapter 287, shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." Mo.Rev.Stat. § 213.070. Chapter 285 is the Worker's Compensation Act and Chapter 287 is the Public Employee Whistleblowers Act. Defendants argues that Brandon makes clear that plaintiff cannot assert a claim under the Religious Freedom Restoration Act against her former employer. Defendants also argue that with regard to Count 8 – Missouri Religious Freedom Restoration Act, that statute does not apply to defendants. Section 1.307.1 states: "Section 1.302 and this section apply to all state and local laws, resolutions and ordinances and the implementation of such laws, resolutions, and ordinances, whether statutory or otherwise, and whether adopted before or after August 28, 2003." Defendants state that the School District's policy is not a state or local law, resolution or ordinance, nor is it an implementation of such laws, resolutions or ordinances and thus it does not apply in this situation.

In response, plaintiff states that the MHRA's exclusivity is for "damages arising out of an employment relationship." In the instant case, plaintiff states that her damages did not entirely arise out of employment, and that subset of damages is permitted under Title VII. In reply, defendants state that plaintiff does not dispute that the RFRA does not

19

apply to defendants or to the School District's directive because it is not a state or local law, resolution or ordinance, nor is it an implementation of such laws, resolutions or ordinances. Additionally, defendants argue that plaintiff has failed to identify any damages which did not arise out of her employment. Defendants state that plaintiff's claims under the RFRA are preempted by the MHRA and by extension plaintiff's claims under the Missouri Student Religious Liberties Act is also preempted. The Court agrees and finds that plaintiff's claims under the RFRA and the Missouri Student Religious Liberties Act are preempted by the MHRA. Accordingly, the Court hereby **GRANTS** defendant's Motion to Dismiss Counts 7 and 8.

### F. Claims Against Individual Defendants

Defendants state that in Counts 1 – 9, plaintiff brought claims against the individuals in their official capacities in addition to the District. However, defendants state that it is settled law that such claims against the individuals in their official capacities should be dismissed as they are redundant to the claims against the District. As of May 14, 2024, plaintiff dismissed her claims against the individuals in their official capacities.

### G. Qualified Immunity for Defendants Jordan and Obeng

Defendants argue that Count 10 against defendants Jordan and Obeng in their personal capacities should be dismissed based on Qualified Immunity. In Count 10, plaintiff asserted that defendants Jordan and Obeng violated the First Amendment of the Constitution and her Free Exercise of Religion. However, as the Court has already determined that plaintiff failed to state a Free Exercise of Religion claim, the Court finds it is unnecessary to address the issue of qualified immunity. See James v. Cerro Gordo County Jail, No. 17-CV-3039-CJW, 2019 WL 97032, *6 (N.D.Iowa Jan. 3, 2019)("If a

constitutional right has not been violated, it is unnecessary to inquire further regarding qualified immunity."); <u>Kemp v. Black Hawk County Jail</u>, No. C15-2094-LRR, 2017 WL 581316, *5 (N.D.Iowa Feb. 13, 2017)(same).

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** defendants' Motion to Dismiss plaintiff's Complaint (Doc. # 10) and **DENIES AS MOOT** defendants' Motion for a Protective Order (Doc. # 38).

Date: <u>March 31, 2025</u>                                           **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                            Fernando J. Gaitan, Jr.
                                                                                 United States District Judge